[No. 5504.   Decided April 4, 1905.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM A.
ROYCE, *Appellant.*[1]

BURGLARY—EVIDENCE—LETTERS TO SHOW CONSPIRACY TO PROSE-
CUTE—HEARSAY.  In a prosecution for burglary of the house of
M and the theft of a typewriter belonging to M's daughter, letters
from the daughter to the accused, between whom an attachment
had existed, written prior to the commission of the offense,
stating that her parents were threatening to send the accused
to the penitentiary, are inadmissible to show a conspiracy on
the part of the parents; since they were hearsay as against the
parents, and do not tend to show a conspiracy.

BURGLARY—EVIDENCE—CONFESSIONS—VOLUNTARY STATEMENTS TO
POLICE OFFICERS.  In a prosecution for burglary, statements by
the accused to police officers, who were investigating the matter
of the stolen property, made before any charges were preferred
against the  deceased, are not inadmissible as confessions induced
by threats, when they were voluntarily made without threats or
inducements on the part of the officers.

SAME—PAWN  TICKET—ADMISSIBILITY—FURNISHING  EVIDENCE
AGAINST HIMSELF.  In a prosecution for a burglary and the theft
of a typewriter, which was, on the same day, pawned by the
accused, the pawn ticket taken from his person while in the
custody of the officers, but before any charges were' preferred
against him, is competent evidence and admissible, even con-
ceding that it was wrongfully taken from him, and the same is
not open to the objection that the accused was compelled to
furnish evidence against himself.

SAME—SUFFICIENCY OF EVIDENCE.  There is sufficient evidence
to support a conviction of the crime of burglary where it appears
that a house, in which the accused had boarded and with which he
was familiar, was entered in the absence of the family and a
typewriter stolen therefrom, that the accused pawned the type-
writer on the same day, and that he made contradictory state-
ments to the officers respecting the typewriter, failing to satis-
factorily explain his possession.

SAME—EVIDENCE—HEARSAY.  Upon a prosecution for burglary,

[1]Reported in 80 Pac. 268.

, and the theft of a typewriter, hearsay evidence to the effect that the accused had possession of a typewriter prior to the burglary is properly excluded.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 31, 1904, upon a trial and conviction of the crime of burglary. Affirmed.

*Robertson, Miller & Rosenhaupt,* for appellant.

*Horace Kimball* and *A. J. Laughon,* for respondent.

CROW, J.—Appellant William A. Royce was convicted of burglary in the superior court of Spokane county, Washington, and has appealed to this court. It appears that, for about a month or six weeks after the 13th of April, 1903, appellant was boarding at the home of D. C. McFarlane, in the city of Spokane; that McFarlane's family consisted of himself, his wife, his daughter Pearl, and his wife's mother, a Mrs. Lewis. While appellant boarded with said family, he was familiar with the house, and had knowledge of the fact that Pearl, the daughter, had a Remington typewriter. About July, 1903, after appellant had ceased boarding at the McFarlane home, Mrs. McFarlane and her daughter Pearl left for a visit in the East, and were absent about six weeks. Before leaving they took numerous articles belonging to them, placed the same in an attic of the dwelling house, closed the door of said attic, and securely nailed it. During their absence, the house was occupied by Mr. McFarlane and Mrs. Lewis, both of whom were absent during the day time.

On August 17, 1903, the house was burglariously entered, the door to the attic was broken, and some time thereafter it was discovered that the typewriter, which had been placed in the attic, had been taken. On the same day, August 17, 1903, the appellant pawned the typewriter to one Bickford, a pawnbroker in the city of Spokane.

Bickford having made to the city police his usual report of articles pawned to him, one officer Weir, a detective member of the Spokane police force, began to investigate the ownership of the typewriter. He found appellant at a pool room in the city of Spokane, asked him whether he 'had pawned a typewriter and appellant said: "No." Thereupon Weir took appellant with him to Bickford's place of business for the purpose of investigating. As they neared Bickford's store, appellant said: "Do you mean a stenographer machine? I pawned a stenographer machine in here." Afterwards appellant was taken to the police station by officer Weir, where, in the presence of Weir and officer McDermott, he was searched, and a pawn ticket, calling for this particular typewriter was taken from his person. He made certain statements for the purpose of explaining his possession of the typewriter, claiming that it had been given to him by his mother about two years previously, but refused to tell one of the officers where he had been keeping the machine. A few days later, Mrs. McFarlane and her daughter having returned, the loss of the typewriter was discovered, and the machine, having been taken from Mr. Bickford's place of business to police headquarters, was identified as the one that had been taken from the McFarlane house.

It appears that, during the time the appellant boarded at McFarlane's, a very warm attachment existed between him and the daughter Pearl; that, after he ceased boarding there, a clandestine correspondence was conducted between them, against the objections of her parents. Later the attachment between Pearl and appellant seems to have ceased, and on the trial he attempted, on cross-examination of the state's witnesses, to show a conspiracy on the part of the McFarlanes to send him to the penitentiary. On cross-examination of Pearl McFarlane, appellant undertook to introduce in evidence her letters to him, for the

purpose of showing such conspiracy, the letters containing statements to the effect that Pearl's parents were threatening to send him to the penitentiary. These letters were written long before the date of the breaking into the building. Upon objection, the court refused to admit the letters in evidence. They were not offered at any time except on the cross-examination of Pearl, while she was testifying as a witness for the state. It might be said that Pearl, in her cross-examination, admitted having made all of the statements contained in the letters. There was no evidence tending to show that her parents at any time knew of their existence or contents. The pawn ticket, taken from the possession of appellant, was also introduced in evidence, against his objection. Officers McDermott and Weir were permitted to testify to statements made by appellant when he was searched by them at police headquarters, at a time before any charge had been preferred against him.

Appellant has made several assignments of error, in substance, as follows: (1) That the court erred in refusing to admit in evidence the letters written by Pearl McFarlane to appellant; (2) that the court erred in admitting in evidence the statements made by appellant to officers Weir and McDermott; (3) that the court erred in admitting in evidence the pawn ticket taken from the possession of appellant; (4) that the court erred, in refusing to discharge the defendant, on the ground that the evidence was insufficient to warrant a conviction; in denying appellant's motion for judgment notwithstanding the verdict; in denying appellant's motion for a new trial; and in refusing to instruct the jury to find the appellant not guilty; (5) that the court erred in rejecting certain evidence of the witnesses Parker and Stingle, offered by appellant. We will consider these assignments in their order.

(1) The trial court committed no error in refusing to

admit the letters of Pearl McFarlane, which were offered
by appellant upon the cross-examination of said Pearl,
when she was a witness for the state. An examination
of the letters shows that they contained no statements
which Pearl failed to admit having made. The only other
purpose for offering the same, as stated by counsel for
appellant, was to show a conspiracy on the part of Mc-
Farlane and wife to send appellant to the penitentiary.
As against McFarlane and wife, these letters were only
hearsay. Nor do we think they tend to show any such
conspiracy. We fail to see how these letters could have
been at all material, or proper evidence.

(2)   Appellant also insists that the court erred in ad-
mitting in evidence the statements made by appellant to
officers Weir and McDermott, while at the police station.
It appears from the cross-examination of officer McDer-
mott that he was endeavoring to learn where the typewriter
pawned by appellant came from. He states that, at the
time of the conversation, appellant had not been charged
with any crime or misdemeanor, but was simply in the
police office with the officers. Appellant seems to assume
that these statements were confessions obtained from him
by threats or promises, and in support of his position says:
"Nothing is better settled than that confessions extorted
by threats, resulting from inducements held out by officers
of the law to a prisoner in their custody, are not admissi-
ble in evidence." We have carefully examined the evi-
dence, and fail to find that any threats were made, or any
inducements offered, at any time prior to the statements
made by appellant, and recited by the officers in their testi-
mony. Moreover, the record fails to show that appellant
ever at any time made any confessions.

"In criminal law [a confession is defined as], a volun-
tary statement made by a person charged with the commis-
sion of a crime or misdemeanor, communicated to another

person wherein he acknowledges himself to be guilty of
the offense charged, and discloses the circumstances of the
act, or the share and participation which he had in it." 8
Cyc. 562.

We find no confessions made by appellant, and are of the
opinion that every statement actually made by him, and
testified to by the officers, was voluntarily made, without
any threats or inducements upon the part of the officers,
and that said statements were properly admitted.

(3) Appellant also urges that the court erred in ad-
mitting in evidence the pawn ticket, taken from the per-
son of appellant while he was in custody of the officers,
and before any charge of misdemeanor or crime had been
made against him; and appellant contends that, by taking
such pawn ticket from his person, under such circum-
stances, his constitutional rights were violated, in that
his person, papers and effects were subjected to unreasona-
ble search and seizure, and that he was thereby compelled
to produce testimony against himself. In support of this
doctrine appellant has cited the case of *Boyd v. United
States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. We
do not think that the rule there laid down applies to the
facts here. In *State v. Nordstrom,* 7 Wash. 507, 35 Pac.
382, and *State v. Burns,* 19 Wash. 52, 52 Pac. 316, this
court has held that, in a criminal action, articles, per-
sonal effects, or money, taken from the person of a de-
fendant, might be offered in evidence against him. In this
case appellant claims a distinction, for the reason that
the pawn ticket was taken from him wrongfully, while he
was illegally in custody, before any charge had been pre-
ferred against him, and before the officers had any knowl-
edge of the burglary, or had ever heard of the McFarlanes.
Were we to concede the action of the officers to have been
wrongful, and a violation of appellant's rights, still the
pawn ticket was competent evidence and admissible. In

*Gindrat v. People,* 138 Ill. 103, 111, 27 N. E. 1087, the court, in discussing the case of *Boyd v. United States,* uses the following language:

"We think that . . . . the present case is clearly distinguishable from *Boyd v. United States.* In the latter case, the unconstitutional and erroneous order, process and procedure of the trial court compelled the claimants to produce evidence against themselves, and such order, process and procedure were also held to be tantamount to an unreasonable search and seizure, while here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to procure evidence from the defendants, and neither made orders nor issued process authorizing or purporting to authorize a search of premises or a seizure of property or papers, but simply admitted evidence which was offered, without stopping to inquire whether possession of it had been obtained lawfully or unlawfully. Courts, in the administration of the criminal law, are not accustomed to be over-sensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right. In 1 Greenleaf on Evidence, (Redfield's ed.) sec. 254a, it is said: 'Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' "

See, also, *Williams v. State,* 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269; *State v. Pomeroy,* 130 Mo. 489, 32 S. W. 1002; *Shields v. State,* 104 Ala. 35, 16 South. 85, 53 Am. St. 64; *State v. Atkinson,* 40 S. C. 363, 18 S. E. 1021, 42 Am. St. 877; *State v. Flynn,* 36 N. H. 64.

In *State v. Pomeroy, supra,* the second syllabus reads as follows:

"It is not a violation of the constitutional provision that no one shall be compelled to testify against himself in a criminal case to introduce in evidence, in a prosecution for establishing a lottery, tickets, papers, etc., taken from the person and premises of the accused, even though they were seized without authority of law."

Under the above authorities we think it was perfectly proper for the court to admit the pawn ticket in evidence.

(4) The next assignments of error are substantially based upon the proposition that there was not evidence sufficient to warrant a conviction, it being claimed by appellant that possession of recently stolen property, unexplained, is not of itself sufficient evidence to warrant a conviction of the crime of burglary. We will not discuss the question as to whether appellant's position is correct in making this proposition, but will simply say that there was other evidence in the record sufficient to entitle the court to submit the question of the innocence or guilt of the appellant to the jury. It was shown, that the house had recently been burglarized; that, on the day of the breaking, he pawned the machine there taken; that he had full knowledge of the premises; that he was acquainted with the family; that he must have known of the absence of the mother and daughter in the East, and also of the absence of the husband and mother-in-law during the day time. His statements to the officers were also shown, and we think, upon this and other evidence contained in the record, that it was properly a question of fact to be decided by the jury whether or not the appellant was guilty of committing the crime with which he was charged.

(5) There is one other assignment of error, based upon the refusal of the court to admit the evidence of Parker and Stingle, tending to show that appellant had possession of a typewriter prior to the date of the burglary. We have examined the record and think the testimony offered

was hearsay and incompetent, and that the same was properly rejected.

There being no prejudicial error in the record, the judgment of the superior court is affirmed.

Mount, C. J., Dunbar, Rudkin, and Root, JJ., concur.

Hadley and Fullerton, JJ., took no part.