[No. 22564. Department One. October 9, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. ROSS VENNIR, *Appellant.*[1]

[1]Reported in 291 Pac. 1098.

*Edward M. Connelly* and *Joseph A. Albi,* for appellant.

*Chas. W. Greenough* and *Ralph E. Foley,* for respondent.

BEALS, J.—Defendant, Ross Vennir, was charged by information with the crime of being a bootlegger, and, in a second count of the information, with the offense of having liquor in his possession with intent to sell the same. The information also charged him with one prior conviction of violation of the laws against the possession or sale of intoxicating liquor. From a judgment based upon a verdict of guilty rendered by the jury before whom defendant was tried, and sentence pursuant to such judgment, defendant appeals.

From evidence offered on behalf of respondent, it appeared that two members of the Spokane police department arrested appellant, October 5, 1929, on Riverside avenue, Spokane. The officers at once searched appellant's person and took from his pocket a half pint flask of intoxicating liquor. One of the arresting officers (the other having died prior to the date of trial) testified that, on the day of the arrest, he had seen appellant leave a grocery store known as the ''Elena Grocery,'' on the corner of Riverside avenue and Browne street, and proceed in an easterly direction to the ''Midway Garage,'' which is situated on Riverside avenue, approximately a block east of Browne street. The officer testified that appellant entered the garage, remained there a short time, and then proceeded back toward the Elena grocery; that, two days prior to the date of the arrest, the officers had observed appellant enter the Midway garage, coming from the direction of the Elena grocery, and in a short time leave the garage and proceed in the direction of the grocery store. It was not stated positively that on this oc-

casion appellant had either come from or gone to the Elena.

It was not contended by respondent that, on the occasion of the arrest, there was any circumstance in connection with appellant's appearance which might have suggested that he was carrying any intoxicating liquor; neither was there anything in his conduct or actions (unless what appellant did, as herein set forth, constituted ground for suspicion) which indicated that appellant was in any way violating the law. The police officer testified that, as far as he knew, appellant was not in the employ of the Elena grocery, nor had he any business association therewith, save as a patron.

After arresting appellant and searching him, the officers took appellant to the Midway garage, having with them a search warrant authorizing an examination of those premises. It appeared that the proprietor did not require the officers to formally execute their search warrant, but freely permitted them to examine the premises, with the result that the officers searched a Ford car, bearing a California license, and found therein a quantity of moonshine whiskey.

Appellant seasonably moved to suppress the half pint flask of moonshine which the officers had found in his pocket, his motion being supported by affidavits, and also moved to suppress the evidence found by the officers in the search of the automobile. These motions were denied, and, upon the trial of the action, both the half pint flask of moonshine and the supply of liquor found in the car were, over appellant's objection, admitted in evidence on behalf of the prosecution.

Appellant assigns as error the denial of his motions to suppress the evidence and the admission, as evidence against him, of the intoxicating liquor discovered by the officers, both upon his person and in the automobile.

██ As to the intoxicating liquor found in the automobile, appellant's motion to suppress was properly denied. Appellant did not admit ownership of this liquor, but denied any knowledge thereof, or that the automobile in which the same was found was his, or under his control, or that he had any connection whatever with that car or the contents thereof. This being true, appellant cannot contend that his constitutional rights were violated by the action of the officers in searching the car, and if, on the part of the prosecution, evidence was introduced which rendered the intoxicating liquor found in the automobile competent evidence against appellant, the same was properly received in evidence and considered by the jury.

██ As to the flask of liquor found by the officers upon appellant's person, a different question is presented. Officer Adams, who, with the officer who was associated with him, arrested appellant, deposed and later testified that, for five years, he had been a member of the "dry squad" of the Spokane police department; that he had seen appellant in and around the Elena grocery on several different occasions prior to the date of appellant's arrest; that the witness had been informed that appellant was in the habit of making trips from the grocery to the garage and back; that, on this day, the witness and his brother officer observed appellant come out of the grocery, look up and down the street, and go back into the store, and that shortly thereafter appellant again left the grocery and proceeded to the garage; that, as appellant neared the grocery on his return from the garage, the officers arrested appellant and searched him, with the result that they found in his pocket the small flask of intoxicating liquor above referred to.

The officer also deposed that he was not aware that appellant was engaged in any legitimate work, and

that he (the officer) had previously arrested appellant for violation of the laws against the possession and sale of intoxicating liquor. The officer also stated that he knew the reputation of the Elena grocery, and that it was reputed to be a place where intoxicating liquor was sold; that the officer had, during the month of July, 1929, arrested a man who was employed as bartender at the Elena grocery, and taken from his person two flasks of intoxicating liquor; and that on another occasion the officer had arrested another man, whom the officer had seen making trips from the back door of the grocery to a cache of moonshine whiskey located a short distance away. Officer Adams further stated that, at the time of appellant's arrest, he (the officer):

". . . had good reason to believe, and did believe, that the defendant Ross Vennir was acting as a bottle man for the Elena grocery and bar, and that he had committed, and was committing at that time, the felony of being a bootlegger."

In resisting appellant's motion to suppress, the state filed the affidavit of another police officer, who deposed that he had arrested several men in and about the Elena grocery, and had taken from the persons of the men so arrested intoxicating liquor, and that the grocery bore the reputation of being a place where intoxicating liquor was sold. This second police officer was not present when appellant was arrested, and knew nothing of the circumstances surrounding such arrest.

The question of whether or not the search of appellant and the seizure of the flask of intoxicating liquor found upon his person was lawful, depends upon the legality of appellant's arrest. The fact that the officers arrested appellant without a warrant does not of itself indicate that the arrest was unlawful. *State*

*v. Hughlett,* 124 Wash. 366, 214 Pac. 841. The question to be determined is whether or not, at the time of the arrest, the officers believed, and had good reason to believe, that appellant was, in their presence, committing a felony. As was stated by this court in the case of *State v. Hughlett, supra:*

"But in cases amounting to a felony, if the officer believe, and have good reason to believe, that a person has committed, or is about to commit, or is in the act of committing the crime, then he may arrest without a warrant. But the arresting officer must not only have a real belief of the guilt of the person about to be arrested, but such belief must be based upon reasonable grounds."

As to the admission in evidence, against a person charged with crime, of articles seized without the necessary steps having first been taken to make such seizure lawful, this court has followed the Federal rule and held

". . . that it is beneath the dignity of the state, and contrary to public policy, for the state to use for its own profit evidence that has been obtained in violation of law." *State v. Buckley,* 145 Wash. 87, 258 Pac. 1030.

As to what constitutes such irregular seizure of property, many of the authorities are discussed in the opinion of this court rendered in the case of *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922. Upon this point, the opinion of the circuit court of appeals for the ninth circuit, speaking through Gilbert, circuit judge, in the case of *Hernandez v. United States,* 17 Fed. (2d) 373, is of interest. It appeared that the plaintiff in error had been sentenced to imprisonment for ten years upon conviction under two counts of an indictment charging him with violation of the statutes of the United States against possession of, and traffic in, narcotics. The sole question presented before the cir-

cuit court was whether or not evidence obtained upon a search of defendant's person immediately after his arrest should have been excluded. It appeared that officers of the Federal government were watching a house, at which it was believed narcotics had been unlawfully sold. They saw the defendant depart from this house by a rear exit in the company of a woman who was a known narcotic peddler, the couple proceeding down the street, looking around them in different directions, as described by the officers, "in a rather suspicious way." The officers, without any warrant authorizing defendant's arrest, took him in custody, and, upon searching him, found a quantity of morphine in his overcoat pocket. The circuit court quotes with approval the rule laid down in 2 R. C. L. 451, to the effect that:

" . . . probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty."

The court said:

"The officers who made the arrest knew nothing whatever of the defendant or his prior conduct. The fact that he was seen coming from a suspected house in company with a suspected woman, and that he and the woman were walking down the street looking around in what the officers thought was a suspicious manner, whatever that may have meant, constituted all of the evidence of probable cause. It falls far short, we think, of presenting reasonable grounds of suspicion, supported by facts which would warrant a cautious man in believing that the defendant had committed a felony. At most, the circumstances were sufficient to create only a suspicion, and suspicious circumstances, it has been repeatedly held, do not constitute probable cause. It is true that the defendant was arrested in the commission of a felony, as was

subsequently developed, but the officers were not apprised of that fact, by their senses or otherwise, and they had no reasonable ground to believe it.''

The facts in the case cited bear a striking similarity to those in the case at bar. While we do not care to go as far as some Federal courts have gone in suppressing evidence held unlawfully seized by agents of the government, we do hold that, under the facts disclosed by the record now before us, the arrest of appellant without a warrant was not justified by anything which the officers had seen, coupled with facts within their knowledge, as stated by officer Adams. It does not appear that the Elena grocery had ever been proceeded against as a joint; it was simply a store for the sale of merchandise, which included a bar over which soft drinks were sold, in connection with which an employee of the place had been arrested, charged with the sale of intoxicating liquor. The store contained tables at which patrons played cards, and the establishment was naturally frequented by many persons.

Respondent argues that, because the police officers were suspicious as to the conduct of the grocery, this constituted reasonable ground for their belief that appellant, at the time they arrested him, was, in their presence, committing a felony. In this connection, it must be borne in mind that officer Adams, in response to questions by counsel for respondent, testified to the effect that, as far as he knew, appellant was not in the employ of the grocery. As far as the record shows, appellant's presence at the grocery was not so frequent or long-continued as to indicate anything more than the fact that he was a patron of the establishment and availed himself of the privileges there afforded to play cards with his friends and acquaintances. It clearly appears that appellant had been regularly employed in

trucking logs at good wages from the middle of July to the middle of September, and that his prior arrest, May 1, 1928, had been based upon an offense nowise connected with the Elena establishment.

Respondent relies upon the opinion of this court in the case of *State v. Dillon,* 155 Wash. 486, 284 Pac. 1016, in which case this court affirmed a conviction of violation of the liquor laws, in which it appeared that the defendant had been arrested without a warrant. The record in the case cited showed that the arresting officer, who knew the defendant (having on several occasions arrested him) and was aware of the fact that he had been convicted a number of times for violations of the liquor laws, saw the defendant, in the space of about an hour and a half, make five trips between a bar, ostensibly vending soft drinks, and a nearby garage. The next day, the same officer again saw Dillon leave the soft-drink establishment and go to the garage, whereupon the officer made the arrest upon observing the defendant leave the garage and proceed towards the soft-drink parlor. In the case cited, the officers had more reason for believing that Dillon was committing a felony in their presence than did the arresting officers in the case at bar. It is impossible to lay down a fixed rule which will govern in all cases, but the decision in the *Dillon* case was clearly right, while, in our opinion, the facts now before us call for a different conclusion.

The trial court erred in failing, upon appellant's motion, to suppress the evidence in so far as appellant's motion was directed against the flask of liquor found by the officers upon appellant's person.

Appellant assigns error upon the failure of the trial court to give, in its instructions to the jury, a definition of circumstantial evidence. No such instruction was requested by appellant, nor did appellant

except to the failure of the trial court to include any definition of circumstantial evidence among the instructions given. Under these circumstances, there is no error in the record available to appellant in connection with the failure of the trial court to define circumstantial evidence. While it may be that, without either request or exception, error might be assigned upon the failure of the trial court to instruct the jury as to certain matters, no such question is presented as to the matter now under discussion.

In view of the fact that appellant is granted a new trial, other errors assigned need not be discussed.

The judgment appealed from is reversed, with instructions to the trial court to grant appellant a new trial.

MITCHELL, C. J., PARKER, MILLARD, and TOLMAN, JJ., concur.