[No. 26339. Department One. December 14, 1936.]

The State of Washington, *Respondent,* v. Joseph Gunkel *et al., Appellants.*[1]

[1]Reported in 63 P. (2d) 376.

*Edward M. Connelly,* for appellants.

*Ralph E. Foley* and *J. J. Wrabek,* for respondent.

STEINERT, J.—Appellants, as defendants, were charged by information with the crime of robbery and, upon a trial by jury, were found guilty. Their motion for new trial having been denied, separate judgments of conviction and sentence were entered. From such judgments, this appeal was taken.

Appellants' assignments of error may be grouped under three heads: (1) Error in admitting certain personal property in evidence, over appellants' objec-

tions based on constitutional grounds; (2) error in admitting certain of the same property in evidence over appellants' objections on the ground that such evidence was irrelevant, immaterial, and incompetent; and (3) error in denying appellants' motion for directed verdict.

The facts material to a consideration of these assignments are as follows: On the morning of December 23, 1935, shortly before noon, two employees of Montgomery, Ward & Company, a department store in Spokane, while on their way to a bank for the purpose of making a deposit of the store's receipts, which they were then carrying in two canvas sacks, were held up and robbed, on one of the principal streets of the city, by two men visibly armed with automatic pistols. Many people were on the street upon the occasion and witnessed the robbery. The two robbers were not wearing masks and, according to some of the witnesses, were bareheaded, at the time. After committing the deed, the two bandits escaped in a waiting automobile operated by a confederate. The sacks that were thus taken contained several thousands of dollars, consisting of silver, American and Canadian currency, money orders, and bank checks.

On December 30, 1935, at about one o'clock in the morning, appellants registered, under assumed names, at a hotel in Seattle, paying a week's rent in advance.

It appears that, while appellants were in Seattle, the police of that city were making an investigation with reference to a certain crime, or crimes, that had been committed in Spokane, although, concededly, the investigation was not in connection with the robbery involved in this case. Although appellants were under suspicion of the crime concerning which the investigation was in progress, their true names and exact location in Seattle were not then known to the Seattle

police. The extent of the information which the police department actually had does not appear from the record, but it does appear that two Seattle detectives, who had been assigned to the robbery detail, were directed by their captain to locate the appellants. The captain gave the detectives certain information concerning the matter to be investigated by them, but, when one of the detectives attempted to state at the trial what that information was, he was prevented from so doing by appellants' counsel.

On the morning of January 6, 1936, at about ten o'clock, the two detectives, in pursuance of their investigation, went to the hotel where appellants were staying and there interviewed the clerk at the desk. After the interview, the detectives returned to the police station. Later, about noon, they went back to the hotel and then proceeded to the room which appellants were occupying. The detectives knocked at the door twice, and, in response, Landy opened it and inquired what they wanted. On being told by the officers that they were city detectives, Landy attempted to shut the door. The officers resisted his attempt and succeeded in pushing themselves into the room. They did this, however, without having a search warrant.

Appellant Gunkel was, at the time, lying on a bed in the room. Landy, standing near the door, reached toward his hip pocket, whereupon one of the officers covered him with a gun and commanded him to raise his hands. Landy backed into the bathroom but kept his hand on his hip. After some maneuvering, the officer got close enough to Landy to reach around him and grab his hand. In it was a .32-caliber automatic pistol, fully loaded. After disarming Landy, the officer placed him under arrest. At about the same time, the other officer arrested Gunkel.

After the appellants had been handcuffed, Landy

offered to give the officers money if they would allow him and Gunkel to get out of town, at the same time declaring, "We haven't done anything in your town." In the meantime, one of the officers had found Gunkel's wallet, and the money therein, consisting of a roll of bills, was exposed to view. Landy told the officers to look under the pillow, where they would find more money. The pillow was turned back, and another roll of bills was found, among them being seventy dollars in Canadian currency. Landy then asked: "Now, will you let us get out of town?" He was told that he and his companion would be taken to jail.

The officers then searched the room and found a .45-caliber automatic pistol, fully loaded, four cartridge clips, three boxes of shells, a leather-bound sap, also an old .45 Colt revolver in a suitcase, and a canvas sack which was later identified as one of the sacks that had been taken in the robbery. All of these articles were retained by the police until the time of trial.

An information charging appellants with robbery was filed February 19, 1936. A list of the state's witnesses was filed March 2, 1936. The trial took place April 7, 1936.

Upon the trial, the events leading up to, and including, the commission of the crime and the subsequent escape were related in detail. Landy was identified positively as one of the robbers. As to Gunkel, there was sufficient evidence of identification to make the question an issue of fact for the jury. Neither of the defendants testified.

One of the detectives was called by the state to testify concerning the arrests and the search of appellants' room. After he had told how the entrance to the hotel room had been effected and how he had taken the pistol from Landy, the state offered the gun in evidence as an exhibit. Appellants' counsel then asked

permission to interrogate the witness "on *voir dire.*" In response to counsel's questions, the witness testified that the officers did not have a search warrant at the time of the arrests; and further, that they then had no information indicating any connection between the appellants and the particular robbery. What information or evidence they had concerning appellants' connection with some other crime or crimes, committed in Spokane, does not specifically appear from the record, but it does appear therefrom that appellants were under suspicion and that the police authorities were acting under information concerning the two men with reference to a crime or crimes thought to have been committed by them in Spokane.

At the conclusion of his interrogation, counsel for appellants objected to the admission of the gun in evidence and announced, also, that he would object to the introduction of any of the other articles above named. The court took the offer of the state, and the objection of the appellants, under advisement until the following morning, and then, after overruling appellants' objection, admitted the gun and, subsequently, the other articles, in evidence, on the ground that no motion to suppress the evidence had been timely made. This constitutes the basis of the first group of assignments of error.

The record discloses that there was considerable argument between counsel concerning the search and the manner in which the articles had been obtained. While the argument is not set forth with completeness in the statement of facts, it does appear from the remarks of both the court and the prosecutor that it would have been necessary for the state to procure affidavits in order to show that there were reasonable grounds for making the arrests, and that to obtain such affidavits would require time.

534

■ Appellants' contention is rested, fundamentally, upon the protection afforded by the Federal and state constitutions and state statutes against unlawful searches and compulsory evidence. Fourth and fifth amendments to the United States constitution; Art. I, §§ 7 and 9, Washington constitution; Rem. Rev. Stat., §§ 2240-1, 2240-2 [P. C. §§ 9358-1, 9358-2].

This is not a new question in this state. There have been many cases of like import, all based upon instances where articles seized by police officers without a search warrant, or upon an invalid warrant, were subsequently offered in evidence against the person from whom, or on whose premises or property, they were taken. The following cases are illustrative of the variant states of facts and circumstances under which particular articles were seized: *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390; *State v. Dersiy,* 121 Wash. 455, 209 Pac. 837, 215 Pac. 34; *State v. Smathers,* 121 Wash. 472, 209 Pac. 839, 215 Pac. 35; *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841; *State v. Nilnch,* 131 Wash. 344, 230 Pac. 129; *State v. Pielow,* 141 Wash. 302, 251 Pac. 586; *State v. Buckley,* 145 Wash. 87, 258 Pac. 1030; *State v. Beaupre,* 149 Wash. 675, 271 Pac. 26; *State v. Vennir,* 159 Wash. 58, 291 Pac. 1098; *State v. Kinnear,* 162 Wash. 214, 298 Pac. 449, 74 A. L. R. 1400; *State v. Raum,* 172 Wash. 680, 21 P. (2d) 291; *State v. Stilts,* 181 Wash. 305, 42 P. (2d) 779.

These cases either specifically announce, or else recognize, the well settled principle, or rule, that the state may not use, for its own profit, evidence that has been obtained in violation of law. But these same cases also state, or else recognize, the equally well settled exception to the rule, namely, that objection to such evidence must be timely made. While the constitutional rights of the individual are to be preserved, those rights are dependent, for their recognition,

upon a timely assertion. The question most often arising in the courts with reference to the constitutional rights of a person charged with a criminal offense is whether application for protection of the right has been timely made. The cases above cited are instances of the different situations that arise in this respect.

Realizing that it was advisable, and even necessary, in the proper administration of justice, that the law should be made clear with respect to such matters, for the guidance of the bench, bar, and litigants, this court, in *State v. Dersiy*, 121 Wash. 455, 209 Pac. 837, 215 Pac. 34, on rehearing *En Banc*, laid down certain specific rules, which are easily understood and may be readily followed:

(1) Where, by the direct or proper cross-examination of the state's witnesses, it is made to appear, or it is otherwise admitted, that the articles which are offered in evidence have been unlawfully seized, it is the duty of the trial court, upon objection, to refuse to receive them in evidence. There being no question of fact under such circumstances, and nothing to require the court to stop in the midst of the trial to try a collateral fact, the court has only to rule on the admissibility of evidence upon admitted or conceded facts.

(2) Where, during the trial, the seized articles are offered in evidence, and it does not appear from the state's testimony, or otherwise, that such articles were unlawfully seized, and objection is made to the introduction of such evidence, on the ground that it was unlawfully seized, and the defendant offers, by affidavit, or otherwise, to prove such unlawful seizure, the court should receive the articles in evidence, because it will not, at that stage of the proceedings, stop to investigate the disputed circumstances under which the articles were seized. When a defendant desires to sup-

press, as evidence, the articles taken, he must, within a reasonable time before the case is called for trial, move for such suppression and thus give the court an opportunity to try out the disputed question of fact.

(3) An exception to the last stated rule is this: Where, during the trial of the case, the defendant objects to the reception of the articles in evidence, on the ground that they were unlawfully seized, and offers to prove such unlawful seizure and also offers to prove that, by the exercise of reasonable diligence, he could not before have learned that the articles were unlawfully seized, the court should stop in the trial of the case and determine the collateral issue concerning the legality of the seizure.

We have reiterated these rules at length, not only because they were originally so clearly stated, but particularly because, in our opinion, they solve the present problem.

Manifestly, the exception stated in subdivision (3) of these rules does not obtain here, because appellants did not offer to prove that, by the exercise of reasonable diligence, they could not have learned that the articles had been unlawfully seized. Appellants were present on the occasion of the arrests, knew that no search warrant was exhibited or proclaimed, and saw that the articles were being taken. Three months elapsed between the time of the seizure and the trial, and, during all that time, the articles remained beyond appellants' possession or control. They also knew that the detectives would be called upon to testify, because the state's list of witnesses, including the names of the detectives, was filed more than a month prior to the trial, and, of course, they knew that the detectives would testify concerning the arrests and search.

Subdivision (1) and (2) of the rules, considered together or reciprocally, and in the light of what oc-

curred prior to and at the time of the trial, do not avail the appellants, but militate against them. As already stated, had appellants desired to have the evidence suppressed, they had ample time to move in that direction prior to the trial, and, with the knowledge that they had, it was their duty to do so. Nor can it be said, as appellants strenuously urge, that, under the facts and circumstances of the case, it was made to appear by the direct or proper cross-examination of the state's witnesses, or that it was otherwise admitted, that the articles were unlawfully seized. The state's witnesses did not testify to anything, upon direct examination, from which it could be held that the seizure was unlawful, and, certainly, the state did not "otherwise" admit its unlawfulness. The state took the very contrary position.

So far as revelation by cross-examination is concerned, the rule prescribes that it must be by *proper* cross-examination. This court has squarely held that, where no question has been asked of the state's witnesses, on direct examination, relative to the procuring of a search warrant, cross-examination upon that subject is improper, under the very rule now being considered. *State v. Stilts,* 181 Wash. 305, 42 P. (2d) 779. When the purpose of counsel's preliminary inquiry became apparent, the state objected and subsequently moved that the testimony thus elicited by appellants' counsel be stricken.

The fact that the interrogation was designated as an examination upon *"voir dire,"* instead of cross-examination, does not alleviate the situation for appellants. If it is to be considered as an examination on *voir dire,* which we do not concede, then it went only to the competency of the witness, and not to the competency or relevancy of the testimony in question. *McDonald v. Young,* 109 Iowa 704, 81 N. W. 155; *State v.*

*Martin,* 47 Ore. 282, 83 Pac. 849, 8 Ann. Cas. 769; *State v. Von Klein,* 71 Ore. 159, 142 Pac. 549, Ann. Cas. 1916C, 1054; 12 Enc. of Evidence 1046. In the case at bar, the witness was not shown to be incompetent to testify. The incompetency, if such it was, related only to the evidence, and, since the incompetency did not appear upon direct examination, it could not be elicited upon improper cross-examination.

There was a sufficient showing made to the court to indicate that the state had evidence which would prove the arrests and subsequent seizure to have been lawful, but, to determine that fact, it would have been necessary to suspend the trial and inquire into a collateral issue. The court was not required to stop and make a collateral inquiry at that stage of the proceedings, it being then apparent that appellants had had ample time and opportunity to present a motion for the suppression of the evidence.

Appellants' second contention is that the articles seized at the time of their arrest should not, in any event, have been admitted in evidence, because, as such, they were irrelevant, immaterial, and incompetent.

There had been previous evidence that the robbers had used automatic pistols at the time of the hold-up. The descriptions by various witnesses of the weapons then displayed were sufficient to admit in evidence those found in the possession of appellants. Although only two guns were actually used at the time of the robbery, while three were subsequently found, they were all a part of the same possession at the time of the seizure, and the state was not required to limit itself to any particular two. In any event, there could be no prejudice to the appellants from the admission of the third gun in evidence, when it had been actually shown that they were armed at the time of the robbery.

The cartridge clips and shells were admissible because they tended to prove that the guns which appellants carried at the time of the robbery were loaded.

The money that was seized by the officers sufficiently corresponded in amount, denominations, and kind to make it admissible. Another ground of its admissibility was that appellants had offered it to the officers as a bribe for their requested release. *State v. Edelstein,* 146 Wash. 221, 262 Pac. 622.

The canvas sack was identified as one of those that contained the money at the time of the robbery, and was therefore admissible. In addition to its own admissibility, it had an added significance. Being a part and parcel of an assortment of articles, the commingling of which was strongly suggestive of means and effect, there was at least an inference which the jury might draw, in the absence of evidence to the contrary, that all such property was in the possession of appellants at, and from the time of, the consummation of the robbery.

The admissibility of the leather-bound sap is somewhat doubtful, although it may be justified upon the reason just given. If, however, it could be said to be irrelevant, its admission was nevertheless without prejudice. The verdicts could not have been otherwise than they were if the sap had been excluded. It can hardly be said in this case that the jury was in any way prejudiced against appellants by the introduction of the sap, because the fact is that the jury, in its verdicts, recommended leniency toward both appellants.

The final assignment of error is that the evidence was not sufficient to sustain a conviction. This assignment is based partly upon the assumption that the seized articles should not have been received in evidence, and partly upon the alleged failure of identification of the appellants. In view of what we have al-

ready stated herein upon both of these matters, this assignment requires no further discussion.

The judgment, in each instance, is affirmed.

MILLARD, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.