[No. 36253. En Banc. December 27, 1962.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM MARSHALL MAXIE, *Appellant*.*

WEAVER and ROSELLINI, JJ., dissent.

*Irving C. Paul* and *Henry Opendack*, for appellant.

*Charles O. Carroll* and *Lewis Guterson*, for respondent.

HILL, J.—This is an appeal from a judgment of conviction on a charge of burglary. The only issue is whether the trial court erred in refusing to suppress the evidence, which was secured by searching the defendant at the time of his arrest, and in admitting that evidence at the trial over the objection of the defendant. This depends on whether the arrest, which preceded the search, was lawful; and that, in turn, depends on whether the arresting officer had reasonable and probable cause to believe that the defendant had committed a felony.

*Reported in 377 P. (2d) 435.

█ No elaboration of the law, as to when an officer may make an arrest without a warrant, is required; see *State v. Brooks* (1960), 57 Wn. (2d) 422, 424, 357 P. (2d) 735. In that case we used the following quotation from *State v. Hughlett* (1923), 124 Wash. 366, 368, 214 Pac. 841, 843:

" ' . . . Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . . "

The determination of whether the arrest was lawful in this case, does not depend upon conflicting evidence but upon whether the affidavit[1] filed by the arresting officer, in opposition to the motion to suppress, spells out reasonable and probable cause.

At the time of the hearing on the motion to suppress, the arresting officer testified in person but added nothing material to his statement in the affidavit.

█ Briefly stated, the circumstances are: A police officer in a small town learned, at 1:45 a. m., that a cafe in the

---

[1]"That he is Chief of Police, North Bend Police Department; that on the morning of February 22, 1961 at approximately 1:45 a. m., he received a call from Officer Clifford Riste that the Little Chalet Cafe had been broken into. Later that morning in the course of investigation the affiant and Officer Riste went to Ken's Cafe, which cafe is open all night, and observed that there were five patrons there including the defendant. Affiant asked the waitress if any one had been in the cafe spending any amount of Canadian coins, since affiant had been informed by the owner of the Little Chalet Cafe that a quantity of Canadian coins had been taken from the cash register. She stated that the defendant had asked her to exchange some coins, mostly Canadian, that he had in his possession to dollar bills, which she did, giving him three one dollar bills. The defendant was then questioned and asked to show some identification, was placed under arrest and was then taken to a booth at the back of the restaurant and asked to empty his pockets. It was found that his pockets contained a large quantity of coins, partly Canadian and partly American, including a roll of dimes and a roll of quarters which had been reported taken from the cafe, as well as two mutilated dimes which the cafe owner indicated had been in the cash register.

"The arrest of the defendant at the time was without a warrant, but was based upon affiant's belief that he had committed the burglary in question in view of the statement of the waitress and the fact that affiant had never seen him in town before."

community had just been broken into and that the loot included a quantity of Canadian coins; and, then, a short time later when he learned from a waitress in an all-night cafe that a stranger, whom she pointed out, had just requested her to give him dollar bills for coins (mostly Canadian), which she had done; he questioned the stranger and, believing that he had committed the burglary, arrested him. We hold that these circumstances constitute reasonable and probable cause for his belief; hence, reasonable and probable cause for the arrest.

The trial judge, the Honorable Donald L. Gaines, made an admirably succinct analysis at the conclusion of the hearing on the motion to suppress, in which he said:

". . . Now, again, we are down to the problem of whether the showing that is made here constituted reasonable cause to arrest the Defendant.

"Now, reasonable cause is not proof sufficient to convict in the nature of things. Otherwise the police officer would be helpless to make an arrest unless he was handed a signed confession or something like that. The problem and the law is, what does constitute reasonable cause under the circumstances for a peace officer to make an arrest. He is called upon to make that decision, to make it quickly, and I sometimes think we hand the police officer the job of making the decision or making an arrest on an instant's notice, that the courts will spend hours debating whether cause existed or not. That is the problem a peace officer carries with him all the time, along with his badge.

"Now, do these facts constitute reasonable cause as set forth in Mr. Clark's affidavit, as controverted by Mr. Maxie's affidavit and explained by Mr. Clark's affidavit, or testimony in court this morning.

". . . I find there was probable cause to make this arrest and inquiry. Now, that doesn't prove him guilty of the offense, that is what we have a trial for. The question is, did he have a right to make an arrest for a felony, and of course the test is, as our Supreme Court has just recently again reiterated, does he have probable cause in view of the circumstances as they confront him at the time to detain an individual as was done in this case."

Much fun was made of the fact that the arresting officer made the arrest because, as stated in his affidavit, he had

never seen the defendant in town before. When the mirth over the sallies subsides, there is found to be sound judgment in the officer's statement. Had the person, pointed out by the waitress as changing the Canadian coins for dollar bills, been one of the other patrons of the cafe who lived in North Bend, the officer would have known that he had time for a more complete investigation and to ask for the issuance of a warrant; but when the suspect is a stranger and the officer has reasonable grounds to believe him guilty of a felony, an officer in a town like North Bend either arrests such suspect or takes the chance that within the next 45 minutes he will be somewhere in a large city if he travels west or south, or on the other side of the mountains if he travels east. As the trial judge pointed out in his oral opinion, an officer in these mobile days has to make his arrests fast or not at all.

This was not an arrest on mere suspicion. What we said in *State v. Young* (1932), 39 Wn. (2d) 910, 918, 239 P. (2d) 858, is applicable here:

" . . . A mere suspicion denotes lack of fact or evidence. Here the arrest was based upon reasonable grounds, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty of the reported felony. . . . "

Indeed, a majority of this court are of the opinion that had the officer failed to make an arrest under the circumstances, he would have been derelict in his duty.

There was no reason to suppress the evidence, gained on the search following a lawful arrest. That evidence satisfied the jury that the defendant had been guilty of two burglaries. The conviction is affirmed.

FINLEY, C. J., DONWORTH, OTT, HUNTER, and HAMILTON, JJ., concur.

WEAVER and ROSELLINI, JJ. (dissenting)—On this appeal from a judgment of conviction for burglary, there is here for decision the legality of the search of the appellant's person, which, in turn, depends upon the validity of his arrest.

Early in the morning, the police department of North

Bend was notified of the burglary of a cafe in that community, and that a quantity of Canadian coins had been stolen. Soon thereafter, on the same morning, the police chief inquired of a waitress in another cafe if anyone there had spent Canadian coins. She identified the defendant as one who had exchanged coins, some of them Canadian, for three one-dollar bills. Whereupon, the appellant was arrested and thereafter, without a warrant, searched by the police.

The search revealed a large quantity of coins, partly Canadian and partly domestic and two rolls of coins, which coins were seized and at the trial offered and admitted in evidence over the appellant's objection, notwithstanding his pretrial motion to suppress such evidence.

The validity of the arrest depends upon the showing in the affidavit of the chief of police, which is set forth in note 1 of the majority opinion; it will not be repeated.

That a burglary had been committed is beyond dispute, but the validity of appellant's arrest depends upon whether or not at the time of the arrest the chief of police had probable cause to believe that the appellant had committed the offense.

Since *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684,[2] the validity of an arrest which is claimed to justify a search is no longer a matter of state law.[3] *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914), decided that evidence seized as the result of an unlawful search was not admissible in a prosecution for a federal offense. Eight years later (1922), this court, in *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390, although as

---

[2]*Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684, has been reviewed and its effects analyzed very extensively in the law journals. See: John L. Bell, Criminal Law—Arrest—Search and Seizure—Probable Cause, 24 Albany L. Rev. 422 (1960); and George Rossman, Search and seizure—probable grounds, 46 A.B.A. Jour. 85 (1960).

[3]Compare the *post Mapp (Mapp v. Ohio, supra)* opinions of the Supreme Court of Michigan, *People v. Zeigler,* 358 Mich. 355, 100 N.W. (2d) 456, and the New York Court of Appeals, *People v. Loria,* 10 N. Y. (2d) 368, 179 N.E. (2d) 478.

a matter of state law, adopted the exclusionary rule of the *Weeks* case, notwithstanding that *State v. Royce,* 38 Wash. 111, 80 Pac. 268, held to the contrary. The exclusionary rule has been consistently followed since 1922.[4]

Three years before *Mapp v. Ohio, supra,*[5] Washington law was summarized in *State v. Greco,* 52 Wn. (2d) 265, 266, 324 P. (2d) 1086, as follows:

"*Wolf v. Colorado,* 338 U. S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359, decided that the fourth amendment to the Federal constitution applied to state action, but that the Federal exclusionary rule, which originated in *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341, as a means of enforcing the constitutional guaranty against unreasonable searches and seizures, did not. *Wolf v. Colorado, supra,* discloses that thirty-one states now reject the exclusionary doctrine of the *Weeks* case, while sixteen states—including Washington, *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390— follow the Federal exclusionary rule."

*Mapp v. Ohio, supra* (June, 1961), overruled *Wolf v. Colorado,* 338 U. S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359 (June, 1949), and held that searches and seizures in state prosecutions in state courts are governed by federal law. Therefore, one must turn to the decisions of the Supreme Court of the United States to ascertain whether the North Bend Chief of Police had probable cause for believing that the appellant had committed the burglary. If he did have

---

[4]*State v. Michaels,* 60 Wn. (2d) 638, 374 P. (2d) 989; *State v. Brooks,* 57 Wn. (2d) 422, 357 P. (2d) 735; *State v. Young,* 39 Wn. (2d) 910, 239 P. (2d) 858; *State v. Miles,* 29 Wn. (2d) 921, 190 P. (2d) 740; *State ex rel. Fong v. Superior Court,* 29 Wn. (2d) 601, 188 P. (2d) 125; *Tacoma v. Houston,* 27 Wn. (2d) 215, 177 P. (2d) 886. *State v. Gunkel,* 188 Wash. 528, 63 P. (2d) 376; *State v. Kinnear,* 162 Wash. 214, 298 Pac. 449, 74 A.L.R. 1400; *State v. Vennir,* 159 Wash. 58, 291 Pac. 1098; *State v. Jarvey,* 157 Wash. 236, 288 Pac. 923; *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922; *State v. Buckley,* 145 Wash. 87, 258 Pac. 1030; *State v. Etheridge,* 135 Wash. 500, 238 Pac. 19; *State v. Nilnch,* 131 Wash. 344, 230 Pac. 129; *State v. Smathers,* 121 Wash. 472, 209 Pac. 839; *State v. Dersiy,* 121 Wash. 455, 209 Pac. 837; *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390.

[5]Six years before *Mapp v. Ohio, supra,* California adopted the exclusionary rule of the *Weeks* case, *supra,* as a matter of state law, because the courts (per Traynor, Judge) should not have a hand in such " 'dirty business' ". *People v. Cahan,* 44 Cal. (2d) 434, 445, 282 P. (2d) 905, 50 A.L.R. (2d) 513.

probable cause for such a belief, the arrest was lawful, and if not, the arrest was illegal and the subsequent search of the appellant's person unlawful, and if so, appellant's motion to suppress the evidence seized was erroneously denied.

The determination of this point does not depend upon the resolution of conflicting evidence but upon the sufficiency of the affidavit of the chief of police. Before his visit to the cafe in question, he was without knowledge of either the appellant or any suspicion of his possible connection with the crime. The only thing which he brings forward to sustain the legality of the arrest is that the appellant had exchanged coins, some of which were Canadian, for three one-dollar bills. In this there was nothing unlawful. All have a perfect right to possess Canadian money and to change it for domestic currency as any person returning from a Canadian visit knows.

*Henry v. United States,* 361 U. S. 98, 4 L. Ed. (2d) 134, 80 S. Ct. 168, is decisive. The search in that case depended upon the validity of the arrest. The circumstances were stated by the court in the following paragraph:

"There was a theft from an interstate shipment of whisky at a terminal in Chicago. The next day two FBI agents were in the neighborhood investigating it. They saw petitioner and one Pierotti walk across a street from a tavern and get into an automobile. The agents had been given, by the employer of Pierotti, information of an undisclosed nature 'concerning the implication of the defendant Pierotti with interstate shipments.' But, so far as the record shows, he never went so far as to tell the agents he suspected Pierotti of any such thefts. The agents followed the car and saw it enter an alley and stop. Petitioner got out of the car, entered a gangway leading to residential premises and returned in a few minutes with some cartons. He placed them in the car and he and Pierotti drove off. The agents were unable to follow the car. But later they found it parked at the same place near the tavern. Shortly they saw petitioner and Pierotti leave the tavern, get into the car, and drive off. The car stopped in the same alley as before; petitioner entered the same gangway and returned with more cartons. The agents observed this transaction from a distance of some 300 feet and could not determine

the size, number or contents of the cartons. As the car drove off the agents followed it and finally, when they met it, waved it to a stop. As he got out of the car, petitioner was heard to say, 'Hold it; it is the G's.' This was followed by, 'Tell him he [you] just picked me up.' The agents searched the car, placed the cartons (which bore the name 'Admiral' and were addressed to an out-of-state company) in their car, took the merchandise and petitioner and Pierotti to their office and held them for about two hours when the agents learned that the cartons contained stolen radios. They then placed the men under formal arrest."

The court held the arrest unlawful and the subsequent search in violation of the federally guaranteed constitutional right against unreasonable searches and seizures. The court's language is as follows:

"... The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband. Its shape and design might at times be adequate. The weight of it and the manner in which it is carried might at times be enough. But there was nothing to indicate that the cartons here in issue probably contained liquor. The fact that they contained other contraband appeared only some hours after the arrest. What transpired at or after the time the car was stopped by the officers is, as we have said, irrelevant to the narrow issue before us. To repeat, an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest." *Henry v. United States, supra.*

*Carroll v. United States,* 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790, makes it plain that the probable cause necessary to render an arrest valid is "a belief, reasonably arising out of circumstances" that the defendant is guilty; and *Henry v. United States, supra,* teaches that simple belief and the good faith of the police are not enough. In the language of Chief Justice Taft in *Director General v. Kastenbaum,* 263 U. S. 25, 28, 68 L. Ed. 146, 44 S. Ct. 52, "... That faith must be grounded on facts within [his]

knowledge . . . which in the judgment of the court would make his faith reasonable." Mere suspicion is insufficient (*Mallory v. United States*, 354 U. S. 449, 1 L. Ed. (2d) 1479, 77 S. Ct. 1356); the police must have knowledge implicating the party arrested.

Possessing Canadian coins is innocent; nor is there anything wrong in changing such coinage. When police have no knowledge of anything but innocent acts by the person arrested, probable cause does not exist. Either circumstance could raise in the minds of reasonable men nothing more than a suspicion that the appellant had some connection with the cafe robbery. Suspicion alone is not probable cause. The indispensable element of probable cause must be found before the arrest may be held a lawful one. That element is here lacking. The arrest was unlawful, and the subsequent search of the appellant's person in violation of his federally guaranteed constitutional rights against unreasonable searches and seizures violated.

The trial court erred in denying the appellant's motion to suppress the articles seized. A new trial should be ordered.

This dissent was written by Judge Foster prior to his death. It is adopted by the undersigned.

---

February 7, 1963. Petition for rehearing denied.