[No. 19872. Department One. January 7, 1927.]

·THE STATE OF WASHINGTON, *Respondent*, v. CHAUNCEY SCHMIDT, *Appellant*.[1]

[1] CRIMINAL LAW (191, 192-1)—CONTINUANCE—ABSENCE OF WITNESS —DISCRETION OF COURT. No abuse of discretion is shown in denying a continuance in criminal cases because of the absence of a witness for whom a subpoena was issued five days before the trial, and who could not be found by the officer, and defendant could have been more diligent (HOLCOMB, J., dissenting).

[2] JURY (60)—IMPANELING FOR TRIAL—PEREMPTORY CHALLENGES— ORDER AND EXHAUSTION. After the panel is filled and passed for cause, a party waiving the right to peremptory challenge waives it only as to the jurors then in the box; but the right' of challenge is revived if the other party thereafter exercises the right of challenge.

[3] CRIMINAL LAW (155)—INTOXICATING LIQUOR (49) — EVIDENCE— EXPERT TESTIMONY—MATTERS INVOLVING ·SPECIAL KNOWLEDGE. Enforcement officers' of experience may testify that liquor found was intoxicating liquor and capable of being used as a beverage where it is shown that they were familiar with liquors from observation·and experience, from its smell, taste or effect.

[4] INTOXICATING LIQUORS (49)—PROSECUTIONS—EVIDENCE—ADMISSI-BILITY. In a prosecution for unlawful possession of intoxicating liquor,·it is admissible to show that, when officers entered the room the defendant was engaged in washing a bottle, because, as he testified, it smelled of whiskey, where whiskey was found concealed in other places about the building to which the defendant had access.

[5] CRIMINAL LAW (215)—TRIAL—CONDUCT OF JUDGE. Misconduct of the judge in showing that he was unfriendly to the accused does not appear from the fact that, on objection on the ground of repetition, he stated to counsel that the witness had answered the questions two or three times, that being the fact.

Appeal from a judgment of the superior court for Franklin county, Paul, J., entered January 12, 1926, upon a trial and conviction of the unlawful sale of intoxicating liquor. Affirmed.

[1]Reported in 252 Pac. 118.

· *Edward A. Davis,* for appellant.

· *Raleigh P. Swanner,* for respondent.

FULLERTON, J.—The appellant, Schmidt, was convicted and sentenced for the crime of conducting and maintaining a place for the unlawful sale of intoxicating liquors.

[1] The court overruled the defendant's motion for a continuance, and the first assignment of error is founded thereon. It appears that sometime prior to November 27, 1925, the court set the cause down to be tried on that date. Five days prior to the date fixed for the trial, the appellant, through his attorney, applied to the court for subpoenas for certain named persons which he alleged to be material witnesses on his behalf. Among the persons so named was one Frank Davis, and a subpoena was issued for him and placed in the hands of the sheriff for service. Two days prior to the date fixed for the trial, the sheriff informed the attorney that the witness could not be found either at his usual place of abode in the county or elsewhere therein.

When the case was called for trial on the appointed day, the attorney moved for a continuance on the ground of the absence of the witness, supporting the motion by his affidavit. The affidavit was to the effect that the witness would testify that the defendant did not have liquor in his possession at the time and place alleged in the information, "and was not operating or maintaining the said place, but was there in the company of the witness . . . playing a game of cards." The affidavit further stated that the witness was a resident of the county, that his wife was on the regular jury panel for that term of court, and that in the belief of the affiant a subpoena could be served on the witness if the cause was continued. While the affidavit was

positive in form, it appears elsewhere in the record that the attorney had no direct information as to the matters to which the witness would testify. Indeed, the attorney frankly stated that he had never seen and did not know the witness.

In our opinion, there was no error in denying the motion. The continuance of a cause, under the circumstances here shown, is always a matter of serious concern to the public. It must bear not only the costs incurred by the prosecution in the preparation for the trial, but largely those of the defendant also. There is, moreover, a difficulty in keeping the witnesses for the prosecution intact, and continuances often result in a miscarriage of justice. For these reasons, and for others that might be stated, the question whether or not a continuance shall be granted because of the absence of a witness on behalf of a defendant is largely relegated to the discretion of the trial court. The ruling of the trial court will, of course, be reviewed for manifest abuse, but before there is a reversal and a new trial granted for that cause, the abuse must clearly appear. In this instance, we can find no such abuse. The defendant could have acted with more diligence, and it by no means clearly appears that the witness would have testified to anything that would have aided the defendant. For cases touching the question see: State v. Leroy, 61 Wash. 405, 112 Pac. 635; State v. Conner, 107 Wash. 571, 182 Pac. 602; State v. Wallace, 114 Wash. 586, 195 Pac. 993.

[2] On the impaneling of the jury, when it became the state's turn to exercise its fifth peremptory challenge, the state's attorney announced that it would accept the jury. The defendant thereupon exercised his fifth peremptory challenge, and another juror was called to take the place of the one so challenged. On

this juror the state exercised its fifth peremptory challenge. Another juror was then called and qualified, and the state, being called upon to exercise its sixth peremptory challenge, again announced that it would accept the jury. The defendant then exercised his sixth peremptory challenge. Another juror was then called against whom the state, over the objection of the defendant, was permitted to exercise its sixth peremptory challenge. Against the juror called to take the place of the one last challenged, the defendant requested the right to exercise a seventh peremptory challenge, which request the court refused. Error is assigned on these rulings, but we think the court but followed the statutes. By § 2138 of Remington's Compiled Statutes (as amended at the legislative session of 1923) it is provided that, in prosecutions for offenses punishable by imprisonment in the penitentiary, such as is the offense here under consideration, the state and the defendant may challenge peremptorily six jurors each. The method of exercising the challenges is provided in § 333 [P. C. § 8498] of the same compilation. That section reads as follows:

"The jurors having been examined as to their qualifications, first by the plaintiff and then by the defendant, and passed for cause, the peremptory challenges shall be conducted as follows, to-wit:

"The plaintiff may challenge one, and then the defendant may challenge one, and so alternately until the peremptory challenges shall be exhausted. The panel being filled and passed for cause, after said challenge shall have been made by either party, a refusal to challenge by either party in the said order of alternation shall not defeat the adverse party of his full number of challenges, but such refusal on the part of the plaintiff to exercise his challenge in proper turn shall conclude him as to the jurors once accepted by him, and if his right be not exhausted, his further challenges shall be confined, in his proper turn, to talesmen only."

It will thus be seen that, after the panel is filled and passed for cause, a party waiving the right to a peremptory challenge waives it only as to the jurors then in the jury box. If the other party thereafter exercises the right of challenge, it revives the right of the other side to challenge the juror called to take the place of the one challenged. This is the procedure the court followed, and error cannot be predicated thereon. As to the second of the objections, it is enough to say that the court allowed the defendant his full number of challenges, and that it is immaterial whether, in the course of the proceedings, the right falls to the state or to the defendant to exercise the last one. See *State v. Vance,* 29 Wash. 435, 70 Pac. 34.

[3] A search was made of the premises, which the defendant was charged with maintaining, by the sheriff and certain of his deputies, and a quantity of liquor was found concealed in various places on the premises and its surroundings. The court permitted the officers to testify, over the objection of the defendant, that the liquor found was intoxicating liquor, capable of being used as a beverage. It is contended that the admission of the testimony was error, but we think the testimony admissible. While we seem not to have passed on the question directly, we have affirmed many cases where the only evidence as to the character of the liquor in question was that of witnesses not skilled in the science of chemistry. The matter is one of common knowledge, and where the witness is shown to be familiar with liquors from his observation or experience, he is competent to testify, from its appearance, smell, taste or effect, as to its intoxicating character. It is not required that the witness be a technical expert. *Albert v. United States,* 281 Fed. 511; *Lewinsohn v. United States,* 278 Fed. 421; *Strada v. United States,* 281 Fed. 143; *Carson v. State,* 69 Ala. 235.

The witnesses in this instance fully qualified under the rule as stated.

[4] The information charged that the place conducted and maintained by the defendant for the sale of intoxicating liquor was "in the Tourist Hotel, or Tourist Parlors, located at 122 W. Lewis street, Pasco, Franklin county, Washington." The evidence disclosed that this was a room on the lower floor of the hotel building, operated ostensibly as a billiard or pool hall, and as a place for the sale of tobacco in its various forms and so-called soft drinks. The place was entered through a door opening from the main entrance hall of the hotel, but seemingly not otherwise connected with the hotel. The hotel was a two-story structure, with sleeping rooms on the upper floor. At the time the officers made the search, the defendant was found with a number of other persons in one of the upper rooms where they had been playing a game of cards. At the time the officers entered the room, the defendant was engaged in washing a bottle at a sink in the room, "because," as he testified, "the smell of whiskey was in it," and he "was afraid they might use it as evidence." The officers found intoxicating liquor in a somewhat cleverly concealed cache in another of the up-stairs rooms, also in the main hallway of the hotel, as well as in the room of the pool hall proper. The court permitted the state to introduce in evidence the bottle the defendant was discovered washing, and the liquor found in the places other than in the pool hall. It is contended that the court erred in so doing, but we think the evidence admissible. It was shown that the defendant had access to all of the places where the liquor was found, and manifestly the evidence had a direct bearing on the question whether the defendant was conducting or maintaining a place for the unlawful sale of intoxicating liquor. The liquor is not objection-

able as evidence because not found in the place the defendant was charged with conducting and maintaining. It is enough that it was found in the vicinity of the place, at locations to which the defendant had access.

[5] The appellant complains that the attitude of the trial judge towards him during the course of the trial was at all times unfriendly, and that he allowed this feeling to protrude itself into the trial. But the only instance we find in the record, concerning which it could be said that the trial judge manifested impatience, arose while the appellant's counsel was cross-examining one of the state's witnesses. To a question propounded the witness, the state objected on the ground that it was repetition. In sustaining the objection, the judge used this language: "I think he," meaning the witness, "has answered that. You have asked him that question two or three times." The record discloses that the objection was rightly sustained; that the witness had in fact theretofore twice answered the question, the answers being to the effect that he did not know what the fact was concerning the matter of the inquiry. But, while we may concede that the trial judge could have found more appropriate language with which to indicate his ruling, we cannot concede that the circumstance warrants a new trial. The record does not disclose the tone of voice used by the trial judge when making the ruling, and this could have a bearing on its effect. But the manifestation of impatience, if impatience was manifested at all, was directed towards counsel rather than the appellant, and it can hardly be supposed that it was a matter to which the jury would give heed when making up their verdict. Certainly, it would be rash to say that the jury was so far devoid of intelligence as to return a verdict of guilty against the appellant because of the circum-

stance, where otherwise they would have returned a verdict in his favor.

The challenge to the sufficiency of the evidence is also without merit. In our discussion of other questions we have somewhat indicated its character, and it is sufficient here to say that, to our minds, it all but conclusively establishes the appellant's guilt.

Other errors assigned raise contentions which this court has repeatedly ruled to be without merit, and it would not be profitable to again notice them here.

The judgment is affirmed.

TOLMAN, C. J., MAIN, and MITCHELL, JJ., concur.

HOLCOMB, J. (dissenting)—Upon the question of the lack of diligence in securing the attendance of the absent witness, whose testimony, if correctly shown by the affidavit, was very material, and might change the result, I dissent.

The record shows application made for a subpoena for the witness two days before the time required by the supreme court rules therefor. This certainly was due diligence.