[No. 35077.    Department Two.    June 23, 1960.]

THE STATE OF WASHINGTON, *Respondent,* v. ALLEN CALVIN SMITH, *Appellant.*[1]

[1]Reported in 353 P. (2d) 155.

*Henry Opendack,* for appellant.

*Charles O. Carroll* and *James Alva Noe, Jr.,* for respondent.

FINLEY, J.—Sometime during the predawn hours of June 5, 1958, the premises of the Gourlay Lumber Company, a Seattle lumber and hardware establishment, were burglarized. Among the items stolen were a large safe, a new orange-colored, "Honko" power lawn mower, and certain power tools. At about 4:15 a. m., on the same morning, Officers Reed and Litzenberger, of the Seattle police department, while on a routine patrol, discovered signs of the burglary. They notified the owner, S. H. Gourlay. He came immediately to the scene and, after an examination of the premises, informed the officers as to what had been taken. At 6:30 a. m., Reed and Litzenberger were directed by police radio to proceed to a certain location a few blocks from the Gourlay premises. They were to investigate a report that a safe had been dumped along the roadway. They found a safe, discovered that it had been broken into, and learned from certain papers strewn about the area that it was the safe which had been stolen from Gourlay. Because of the size of the safe, the officers concluded that more than one person must have been involved in the burglary. Reed and Litzenberger returned to the precinct station at about 8:30 a. m. They were informed that a Mr. Fruetal had called in with a report that he had been awakened by loud noises coming from the premises next door to his home. He described the noises as sounding like "some one hammering on a safe." The officers were further told that Fruetal had also reported that Millard Tomlin (son of Fruetal's next-door neighbor) had been mowing the lawn with a new, *reddish*-colored power mower.

Reed and Litzenberger, accompanied by two detectives, thereupon proceeded to the Tomlin premises. Through an

open garage door at the Tomlin premises they observed a new, orange-colored power mower, which conformed with the description of the one stolen from Gourlay. They also noticed a small house trailer located near the garage. Officer Reed entered the trailer and immediately discovered a note, signed "Mickey," to the effect that the author of the note had "gone to Lake City for a few minutes and would be right back." At the other end of the trailer, Reed found Allen Calvin Smith, the appellant, sleeping. He aroused Smith and without further ado placed him under arrest. Thereafter, the officers searched the garage. They seized the power mower, as well as certain power tools discovered therein to which price tags were still affixed. Subsequently, Millard Tomlin was also apprehended. Both Smith and Tomlin were charged with the Gourlay burglary. Tomlin pleaded guilty; Smith, alone, was tried.

Smith claimed at the trial that he was the subject of an unlawful arrest, and he moved that the physical evidence seized at the time of the arrest be suppressed. The motion was denied. Thereafter, Smith was convicted and sentenced. From this conviction the present appeal is taken.

Appellant has assigned as error: (1) the denial of his motion to suppress the evidence seized at the time of his arrest; and (2) the denial of a motion for a continuance, made in order to allow him to call Freutal as a witness in his behalf.

█ Respecting the latter of these two assignments, it does not appear from the record that appellant ever subpoenaed Fruetal. We have held that it is not error for a trial court to deny a continuance to procure an absent witness where no showing is made by the moving party that a diligent attempt has been made to procure the presence of the witness. *State v. Schmidt* (1927), 141 Wash. 660, 252 Pac. 118. The failure to cause a subpoena to issue clearly constitutes such a lack of diligence as to justify the denial of a motion for a continuance.

██ Appellant's first assignment of error, relating to the denial of his motion to suppress, raises the significant

issue to be considered on this appeal. There is no dispute that the officers had not obtained a search warrant prior to searching the Tomlin premises and seizing the power mower and tools; nor did they have a warrant for the arrest of appellant Smith. Evidence can be collected without a search warrant only when it is obtained "incident to a lawful arrest." *State v. Rousseau* (1952), 40 Wn. (2d) 92, 241 P. (2d) 447; *State v. McCollum* (1943), 17 Wn. (2d) 85, 136 P. (2d) 165; *State v. Cohn* (1930), 155 Wash. 644, 285 Pac. 665. However, an arrest, even without a warrant, is lawful if the arresting officer has reasonable cause to believe that the person arrested has committed a felony. *State v. Miles* (1948), 29 Wn. (2d) 921, 190 P. (2d) 740; *State v. Hughlett* (1923), 124 Wash. 366, 214 Pac. 841. The state contends that, at the time of appellant's arrest, Officer Reed, who made the arrest, had reasonable cause to believe that appellant was involved in the Gourlay burglary, and, therefore, that the arrest and the concomitant search and seizure were lawful.

In *State v. Miles, supra,* the test to be applied in resolving the question as to probable cause was outlined as follows:

" . . . An officer making an arrest without a warrant, on the theory that a crime has been committed, must not only have a real belief of the guilt of the party about to be arrested, but such belief must be based upon probable cause and reasonable grounds. An officer may not arrest simply because he has some fleeting idea or suspicion that the individual has committed a felony."

"Reasonable grounds" exist or may be said to be established if supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the arrested person to be guilty of a felony. *State v. Young* (1952), 39 Wn. (2d) 910, 239 P. (2d) 858. The question then is whether Officer Reed, at the time he placed the appellant under arrest, may be said to have had reasonable grounds to believe that appellant had participated in the Gourlay burglary.

On the basis of the facts above summarized, we are of

the opinion that this question should be answered in the affirmative. Officer Reed knew of the burglary and of what had been stolen. He had reason to believe that more than one person was involved—based on the size of the safe he and Litzenberger had discovered. He had reason to believe, from Fruetal's report, that the safe had been broken open in the Tomlin garage. He had reason to believe—both from the outward appearance of the power mower and from the fact that it was located in the same garage wherein the loud noises like "someone hammering on a safe" had been reported to have occurred—that the mower which he had observed through the open garage door was the machine that had been stolen from Gourlay. From the report that Millard Tomlin had been using a new reddish mower, and from other information known by him, it would seem reasonable for Officer Reed to have believed that Tomlin was one of the thieves. Finally, there was the note, signed "Mickey," which Reed discovered upon entering the trailer. We believe it was reasonable for Reed to have concluded that "Mickey" was Millard Tomlin; that the note was meant for the appellant, who was found asleep in the trailer; and that, therefore, the appellant might well be the person who had assisted Tomlin in the burglary. We are convinced that, under the circumstances, reasonable cause existed to justify the arrest of the appellant.

The judgment of the trial court should be affirmed. It is so ordered.

ROSELLINI and HILL, JJ., concur.

FOSTER, J. (concurring in the result)—While I agree that the judgment should be affirmed, I do so for another reason.

Appellant had no standing to complain of the allegedly illegal search and seizure because he had no interest in either the premises searched or the property seized.

The search occurred in a garage located on premises owned by a Mr. Tomlin. Appellant was discovered and arrested in a nearby house trailer, but he did not claim ownership of, or any proprietary interest in, the garage. Since he claimed no interest in the premises, he had no standing to

complain of a search thereof. *State v. Wooten,* 44 Wn. (2d) 177, 266 P. (2d) 342; *State v. Funk,* 170 Wash. 560, 17 P. (2d) 11; *State v. Vennir,* 159 Wash. 58, 291 Pac. 1098; *State v. Ditmar,* 132 Wash. 501, 232 Pac. 321. Had he complained of a search of the trailer which he actually occupied, he would have had standing to be heard. See, *Rausch v. State,* 75 Okla. Crim. 310, 131 P. (2d) 133.

But although one claims no interest in the premises searched, one is, nevertheless, entitled to the suppression of illegally seized property if he has a proprietary interest in the objects seized. Many cases are reviewed and the law summarized in *Jeffers v. United States,* 187 F. (2d) 498, affirmed 342 U. S. 48, 96 L. Ed. 59, 72 S. Ct. 93, as follows:

" . . . one who seasonably objects to the use in evidence against him of property he owns which has been seized as the fruit of an unlawful search . . . is entitled to its exclusion though the premises searched were not his. . . . To deny him standing to object would be inconsistent with the purpose of the exclusionary rule to make the Amendment effective; for it condemns unreasonable seizures as well as unreasonable searches and applies to 'effects' as well as to 'houses'."

In the affidavit in support of his motion to suppress, appellant did claim ownership in the objects seized. Under such circumstances, the proper procedure is for the court to take evidence and decide the existence or absence of such interest. If interest is found, the motion should then be decided on its merits.

Here the trial court made no determination respecting appellant's alleged interest in the seized property prior to ruling on the motion to suppress. The ground upon which the trial court denied the motion is not disclosed, but, whether it was upon the merits or upon lack of standing, the failure to determine the preliminary question was without prejudice because there is independent uncontradicted evidence and appellant's own confession that he neither owned nor had any proprietary interest in the objects seized.

WEAVER, C. J., concurs with FOSTER, J.