[No. 13386-5-II.   Division Two.   April 15, 1992.]

BARBARA A. CARLE, *Respondent*, v. MCCHORD CREDIT
UNION, *Appellant*.

94

*Gilbert M. Stratton, Jacquelyn M. Aufderheide,* and *Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn*; *Andrew R. Gala* and *Schwabe, Williamson & Wyatt,* for appellant.

*Patricia C. Fetterly* and *Davies Pearson, P.C.,* for respondent.

MORGAN, A.C.J. — McChord Credit Union discharged Barbara Carle from employment. She sued and obtained a jury verdict based on findings of age discrimination and negligent infliction of mental distress. McChord appeals; we affirm.

In 1981, McChord hired Carle to be the branch manager of its Lakewood office. She was hired as an at-will employee.

McChord had a written policy entitled, "Expectations for Employee Finances". Part of the policy stated:

> A satisfactory consumer credit report must be maintained by all employees of the credit union. The credit union may periodically request written authorization to conduct a consumer credit report to verify an employee's financial status meets employment standards.

An unfavorable credit report may result in counseling to include transfer to another position, required consumer credit counseling, or further disciplinary action, which may include termination of employment.

Another part stated:

Employees of the credit union are expected to demonstrate the highest standards of financial responsibility and integrity in the management of their personal accounts at McChord Credit Union.

In late 1987, McChord reorganized and greatly expanded its Lakewood office. The new office was staffed by its president and five vice-presidents. The reorganization resulted in the elimination of only one job, but it was Carle's branch manager position.

Notwithstanding the elimination of Carle's job, McChord's president assured her that she was doing high quality work and could remain with the credit union in another capacity. Thus, she commenced work as a new accounts supervisor on March 22, 1988. The salary range for branch manager had been $2,240 to $3,360 per month; the salary range for new accounts supervisor was $1,588 to $2,375 per month.

A month or so after Carle started work in the new job, McChord began to investigate her personal finances. In early June, it alleged that she was in violation of its financial policy for employees, and on June 10, 1988, it terminated her employment.

At the time of termination, Carle was 43 years old with 17 years' experience in the financial industry. In addition to losing her job, she lost 30 percent of her pension account, which at that time contained $30,651.51.[1] She was replaced by a person 31 years old with 5 years' experience. Her salary as new accounts supervisor had been $2,352 per month; the new employee's salary was $1,650 per month.

Carle sued, alleging seven causes of action. Before trial, five were dismissed by an order granting partial summary

---

[1]The pension account became 100 percent vested after 10 years of service, but was only 70 percent vested when Carle was fired. In 1989, the pension plan was changed so that 100 percent vesting occurred after 6 years of service.

judgment. The other two asserted age discrimination and negligent infliction of mental distress. At the conclusion of trial, the jury returned verdicts of $100,000 for age discrimination and $18,000 for negligent infliction of mental distress. The trial court later awarded Carle reasonable attorney's fees of $47,515 and costs of $6,749.29, but these amounts were only a portion of what she sought.

On appeal, McChord argues that there was insufficient evidence to support a finding of age discrimination;[2] that the trial court incorrectly instructed the jury; that the trial court should not have allowed Carle to tardily challenge a juror for cause; and that the trial court should not have allowed Carle to call a certain expert witness in the rebuttal phase of her case. Carle cross-appeals on the ground that the trial court improperly reduced her claim for attorney's fees and costs.

## AGE DISCRIMINATION

When an employer discharges an employee between the ages of 40 and 70 years because of age, the employer engages in an unfair practice. RCW 49.60.180(2); RCW 49.44.090(1); RCW 49.60.205. Such a practice causes the employer to become liable for damages and reasonable attorney's fees. RCW 49.60.030(2). McChord says that Carle failed to produce evidence sufficient to show a violation of these statutes, and that the trial court erred by failing to grant a directed verdict at the close of all the evidence.[3]

---

[2] In its second assignment of error, McChord also says that there was insufficient evidence to support a finding of negligent infliction of mental distress. However, it presents no argument or authority in support of that assignment, and thus we do not consider it. *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 496, 585 P.2d 71 (1978); *Lassila v. Wenatchee*, 89 Wn.2d 804, 809, 576 P.2d 54 (1978).

[3] McChord also argues that the trial court erred by denying its motion for dismissal made at the close of the plaintiff's case in chief. Any error concerning that motion, however, was waived when McChord elected to present evidence on its own behalf. *See Goodman v. Bethel Sch. Dist. 403*, 84 Wn.2d 120, 123, 524 P.2d 918 (1974); *Heinz v. Blagen Timber Co.*, 71 Wn.2d 728, 730, 431 P.2d 173 (1967); *Wines v. Engineers Ltd. Pipeline Co.*, 51 Wn.2d 487, 498, 319 P.2d 563 (1957).

■■■■ In every case, there is a burden of production and a burden of persuasion. *In re C.B.*, 61 Wn. App. 280, 282, 810 P.2d 518 (1991); *see Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 133-34, 769 P.2d 298 (1989); *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988); E. Cleary, *McCormick on Evidence* 946-52 (3d ed. 1984). The burden of production is applied by the judge, *In re C.B.*, 61 Wn. App. at 283; *McCormick*, at 952-56, who must take the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Xieng v. Peoples Nat'l Bank*, 63 Wn. App. 572, 581, 821 P.2d 520 (1991). The burden of persuasion is applied by the trier of fact.[4] *In re C.B.*, 61 Wn. App. at 282.

To question the sufficiency of evidence is to question whether the burden of production has been met. The burden of production is met when the plaintiff produces evidence sufficient to support a finding of each element of the cause of action. *In re C.B.*, 61 Wn. App. at 285-86. When it is met, it is said that the evidence is "sufficient" or "substantial". *In re C.B.*, 61 Wn. App. at 286.

Usually, the burden of production must be met by the plaintiff in his or her case in chief. However, when an employment discrimination case is patterned after *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973),[5] the burden of production is divided into three facets, two resting on plaintiff and one on defendant. This uncommon allocation of the burden recognizes that the employer is usually the one who knows why employment

---

[4]Here, it is undisputed that plaintiff bore the burden of persuading the jury by a preponderance of evidence. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d at 365.

[5]We have no occasion to consider employment discrimination cases based on direct evidence of discrimination, on a statistical pattern of discrimination, or on any other evidence not patterned after *McDonnell Douglas*. *See Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 278, 774 P.2d 22 (1989) (discussing federal cases not patterned on *McDonnell Douglas*); *Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 881-83, 790 P.2d 1258 (1990) (evidence raised inference of discriminatory intent regardless of whether fourth *McDonnell Douglas* element was met).

was terminated and "helps an alleged victim of discrimination identify the reasons he must show did not in fact lead to his discharge or rejection . . .." *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d at 362 (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014-15 (1st Cir. 1979)).

The first facet of the burden of production must be met by plaintiff in his or her case in chief. It requires that plaintiff produce evidence sufficient to support findings (1) that he or she was discharged from employment; (2) that at the time of discharge he or she was an employee between 40 and 70 years of age; (3) that at the time of discharge he or she was doing satisfactory work; and (4) that he or she was replaced by a younger person. *Grimwood*, 110 Wn.2d at 362; *Brady v. Daily World*, 105 Wn.2d 770, 776, 718 P.2d 785 (1986); *Roberts v. ARCO*, 88 Wn.2d 887, 568 P.2d 764 (1977). Because they are derived from *McDonnell Douglas*, these four elements will be referred to as the *McDonnell Douglas* elements.

The *McDonnell Douglas* elements depart from the usual rules on burden of production in that they require a response from the defendant *before* the plaintiff has made a case sufficient to go to the jury. Even though they have been referred to as plaintiff's "prima facie case", *e.g.*, *Grimwood*, 110 Wn.2d at 362; *Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 278, 774 P.2d 22 (1989), they do not make a case sufficient for submission to the jury. *See Grimwood v. University of Puget Sound, Inc.*, *supra*; *Jones v. Kitsap Cy. Sanitary Landfill, Inc.*, 60 Wn. App. 369, 371, 803 P.2d 841 (1991). Rather, they only create a rebuttable presumption of discrimination sufficient to require that the defendant come forward with evidence of a legitimate, nondiscriminatory reason for the discharge.[6] As the United States Supreme Court[7] has said:

---

[6]Translated into negative terms, the effect of proving the *McDonnell Douglas* elements is to prevent the defendant from obtaining an order of dismissal at the end of plaintiff's case, notwithstanding that the evidence does not yet show why the discharge occurred. *See Grimwood*, 110 Wn.2d at 362-63 (quoting *Loeb v. Textron, Inc.*, *supra*).

[7]Though not required to do so, the Washington Supreme Court has generally looked to federal cases for guidance when ruling upon discrimination claims.

> The phrase "prima facie case" not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense.[8]

(Citation omitted.) *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 254 n.7, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

■ The second facet of the burden of production provides the defendant with the opportunity to rebut the presumption raised by the *McDonnell Douglas* elements. It requires that defendant in its case in chief produce or adopt[9] evidence sufficient to support a finding that plaintiff was discharged for a nondiscriminatory reason. *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. at 255. If defendant fails to do that, the record will show (1) the four *McDonnell Douglas* elements and (2) defendant's failure to advance a legitimate reason for its action after being afforded an opportunity to do so. On such a record, there is no genuine issue of fact, *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. at 254, and plaintiff will be entitled to an order establishing liability as a matter of law. *Grimwood*, 110 Wn.2d at

---

*Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 811, 818 P.2d 1362 (1991); *Grimwood*, 110 Wn.2d at 361-62; *Stork*, 54 Wn. App. at 277-78. *But see Allison v. Housing Auth.*, 118 Wn.2d 79, 91, 821 P.2d 34 (1991).

[8]The rebuttable presumption created by *McDonnell Douglas* conforms to Fed. R. Evid. 301, which governs presumptions in federal court. Not adopted in Washington, Fed. R. Evid. 301 provides:

> In all civil actions and proceedings . . . , a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

[9]Each party is entitled to the benefit of evidence produced by the other. *Provins v. Bevis*, 70 Wn.2d 131, 136-37, 422 P.2d 505 (1967); *Hector v. Martin*, 51 Wn.2d 707, 710, 321 P.2d 555 (1958); *Whitchurch v. McBride*, 63 Wn. App. 272, 275, 818 P.2d 622 (1991); WPI 1.02. Thus, if plaintiff in his or her case in chief goes beyond the four *McDonnell Douglas* elements and introduces evidence tending to show a legitimate, nondiscriminatory reason for the discharge, defendant is entitled to the benefit of that evidence as the court decides whether the second facet of the burden of production has been met.

363 (quoting *Loeb v. Textron, Inc.*, 600 F.2d at 1014-15), 364; *Burdine*, 450 U.S. at 254; *Lewis v. Doll*, 53 Wn. App. 203, 211-12, 765 P.2d 1341, *review denied*, 112 Wn.2d 1027 (1989). However, if defendant produces or adopts evidence of a legitimate, nondiscriminatory reason, the presumption raised by the *McDonnell Douglas* elements is rebutted, *Burdine*, 450 U.S. at 255, and plaintiff "must then have an opportunity" to prove that the defendant's reason is a pretext. *Burdine*, 450 U.S. at 253, 256, 257.

■ The third facet of the burden of production requires that plaintiff in rebuttal produce or adopt[10] evidence sufficient to support a finding that the defendant's alleged reason for discharge is a pretext. *Grimwood*,[11] 110 Wn.2d at 364; *Jones*, 60 Wn. App. at 371; *Burdine*, 450 U.S. at 256

---

[10]See preceding footnote. If any evidence produced in the first or second stages of the case tends to prove that the defendant's explanation is a pretext, plaintiff is entitled to its benefit at this third stage of the case.

[11]The reasoning of *Grimwood v. University of Puget Sound, Inc., supra,* confirms the existence of the third facet of the burden of production. In *Grimwood*, the Supreme Court assumed that plaintiff had produced evidence sufficient to support the *McDonnell Douglas* elements. 110 Wn.2d at 364. Further, it held that defendant had met its burden of production by articulating a non-discriminatory reason for termination. 110 Wn.2d at 364. Nonetheless, it dismissed plaintiff's case. The only logically available conclusion is that a plaintiff who would prove a discrimination case patterned after *McDonnell Douglas* must produce not only evidence sufficient to support each *McDonnell Douglas* element, but also evidence sufficient to support an inference of pretext.

Although the reasoning of *Grimwood* confirms the third facet of the burden of production, some of its language confuses the burdens of production and persuasion. The court said:

Once the employer fulfills his burden of production, *to create a genuine issue of material fact* the plaintiff must satisfy his ultimate burden of *persuasion* and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose.

(Italics ours.) 110 Wn.2d at 364.

An issue of fact is *created* by satisfying the burden of production. *See deLisle v. FMC Corp.*, 57 Wn. App. 79, 84, 786 P.2d 839, *review denied*, 114 Wn.2d 1026 (1990). An issue of fact is *resolved* by satisfying the burden of persuasion. Thus, the quoted language appears to contain an "infelicitous word choice", *Jones*, 60 Wn. App. at 371-73, and we read it as simultaneously expressing two propositions. First, plaintiff makes a case sufficient for submission to the jury (and satisfies the burden of production) only if in the rebuttal phase of the case he or she produces or adopts evidence sufficient to support a finding of pretext.Second, plaintiff always retains the ultimate burden of persuasion. The latter proposition

(unclear whether court was referring to burden of production or persuasion). This can be done directly, or "indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Burdine*, 450 U.S. at 256; *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). If the third facet is not met, defendant is entitled to dismissal as a matter of law. *Grimwood*, 110 Wn.2d at 365; *Hibbert v. Centennial Villas, Inc.*, 56 Wn. App. 889, 894, 786 P.2d 309 (1990). If the third facet is met, the case involves — for the first time — a reasonable inference of discrimination. *Jones*, 60 Wn. App. at 373.

When all three facets of the burden of production have been met, the case must be submitted to the jury. Plaintiff having met the first and third facets, the record will necessarily contain evidence sufficient to support findings of each *McDonnell Douglas* element, plus pretext. *Jones*, 60 Wn. App. at 373 (racial discrimination); *see deLisle v. FMC Corp.*, 57 Wn. App. 79, 84-86, 786 P.2d 839 (age discrimination), *review denied*, 114 Wn.2d 1026 (1990). Defendant having met the second facet, the record will contain evidence sufficient to support an inference that the discharge was due to a legitimate nondiscriminatory reason. Thus, the record will contain reasonable but competing inferences of both discrimination and nondiscrimination, and it is the jury's task to choose between such inferences. *United States v. Stanley*, 928 F.2d 575, 577 (2d Cir.), *cert. denied*, ___ U.S. ___, 116 L. Ed. 2d 108, 112 S. Ct. 141 (1991).

Carle met the first facet of the burden of production.[12] In her case in chief, she produced evidence sufficient to support findings that she was discharged from employment,

---

is expressed elsewhere in *Grimwood*, 110 Wn.2d at 363 (quoting *Loeb*, 600 F.2d at 1014-15), and accords with the United States Supreme Court's principal holding in *Burdine*, 450 U.S. at 259-60. As to the former proposition, see *Jones v. Kitsap Cy. Sanitary Landfill, Inc.*, *supra*; *deLisle v. FMC Corp.*, *supra*.

[12]In its opening brief at page 19, McChord states, "[W]e can assume that Carle made out a prima facie case."

that she was 43 at the time, that she was doing satisfactory work, and that she was replaced by a younger person.

McChord met the second facet of the burden of production. It produced evidence sufficient to support an inference that it discharged Carle because it thought she was in violation of its financial policy for employees.

Carle met the third facet of the burden of production. Taken in the light most favorable to her, the evidence shows that McChord started investigating her finances in April 1988, about a month after she started her substitute job as new accounts supervisor. It had never investigated any other employee. Without her knowledge or consent, it obtained a credit report on her, even though its policy said that it would not do that without her written authorization. Without warning, it confronted her with the credit report on June 8, 1988, 2 days before her discharge. The report showed prompt payment on all accounts but three. She disputed the report's accuracy as to those three and asked for time to seek corrections from the credit reporting agency. It appears that the McChord employee confronting her knew that corrections would take 30 to 45 days, yet McChord required that she make any corrective information available by the next morning. After her discharge, she had the three entries corrected.[13]

On the date of discharge, Carle's debt level was arguably unremarkable. She owed $50,000 on a home mortgage and $5,000 to $7,000 on other consumer debt. McChord claimed that she had been past due on various loans, but Carle testified to the contrary and was supported in part by McChord's own records. When McChord calculated and compared her income and expenses, it included the mortgage payments she was making on the home she owned, but peculiarly omitted rental income she received from tenants

---

[13]McChord contends that the entries were "corrected" because after discharge she paid down the balances. At trial, however, Carle testified that she had the entries corrected by the credit reporting agency. Based on that testimony, the jury could have inferred that the entries were erroneous in the first instance.

occupying the same home. McChord claimed that Carle's Visa card was repeatedly overdue and over limit, but Carle testified that she never had overdue payments; that along with 15 to 20 other employees, she was told on one occasion that she was over limit and would have to bring down her balance; that she did so; and that her Visa card was current on June 10, 1988. McChord claimed that Carle had not paid her real estate taxes on time in 1988, but the evidence showed those taxes were paid only 5 days late.

Cumulated, this evidence was sufficient to support a reasonable inference of pretext and to meet the third facet of the burden of production. *See Jones*, 60 Wn. App. at 373 (sufficient evidence of pretext); *deLisle*, 57 Wn. App. at 86 (sufficient evidence of discriminatory intent). Thus, there were reasonable inferences of both discrimination and non-discrimination; the choice between those inferences was for the jury, *Stanley*, 928 F.2d at 577; and the trial judge did not err when he denied McChord's motion for directed verdict.

JURY INSTRUCTIONS

McChord claims that the trial court erred by refusing to give four of its proposed jury instructions.[14] It seems to make three arguments in support of the claim.

---

[14]McChord's proposed instruction 20 stated:

Just cause for termination is a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. Discharge for just cause is one based on facts (1) supported by substantial evidence, (2) reasonably believed by the employer to be true and (3) which are not for any arbitrary, capricious or illegal reason.

If you find that the plaintiff's discharge was based on facts (1) supported by substantial evidence, (2) reasonably believed by the employer to be true and (3) which are not for any arbitrary, capricious or illegal reason, whether or not you personally agree with the decision, you must find in favor [of] the defendant.

McChord's proposed supplemental instruction 1 provided:

An employer has the right to discharge any employee for any non-discriminatory reason, with or without cause, in the absence of a contract for a specified period of time. The Court has determined, as a matter of law, that the plaintiff did not have a contract of employment.

If you find that the plaintiff's discharge was based on facts (1) supported by substantial evidence, (2) reasonably believed by the employer to be true, and (3) which are not for any arbitrary, capricious reason, whether or not

McChord's first argument is that the trial court erred by failing to give three instructions[15] which, according to McChord, would have prevented the jury from "second-guessing" the decision to terminate Carle's employment. The argument is based on *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 769 P.2d 298 (1989). In that case, an employee sued an employer for breach of contract, 112 Wn.2d at 130, and there was evidence that the employer and employee had formed a contract providing that the employee would be fired only for "just cause". 112 Wn.2d at 129. By entering into such a contract, the employer gave up its discretion to fire without a reason constituting just cause. It did not, however, give up its discretion to decide what facts would constitute just cause, or its discretion to decide on the presence of those facts in a particular case. 112 Wn.2d at 137-38. At trial, then, the jury's normal role as primary fact finder was radically altered. It was required to defer to the employer's exercise of its contractually retained fact-finding discretion, much as an appellate court defers to a trial court's findings of fact on appeal. It could not "second-guess" the employer in the sense of making its own findings of fact, but instead was required to find for the employer if the employer's decision was not arbitrary, capricious or illegal; was based on facts supported by substantial evidence; and was based on facts reasonably believed by the employer to be true. 112 Wn.2d at 139. The Supreme Court reversed because the jury instructions did not properly describe this sui generis role of the jury. *See also Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 437-38, 815 P.2d 1362 (1991).

---

you personally agree with the decision, you must find in favor of the defendant.

McChord's proposed supplemental instruction 2 was the same as number 1 except that it omitted clauses (1) and (3) in the second paragraph. Its proposed instruction 15 was also the same as number 1, except it omitted the second paragraph, substituted "lawful" for "nondiscriminatory" in the first paragraph, and contained some other differences not pertinent here.

[15]Proposed instruction 20, supplemental instruction 1, and supplemental instruction 2.

■ *Baldwin* does not apply to discrimination cases, of which the present case is one. Although the employer in *Baldwin* contractually retained the discretion to define "just cause", no Washington employer can contractually retain the discretion to decide what constitutes discrimination, for that is a matter of public policy established by the Legislature. RCW 49.60.180(2); RCW 49.44.090(1); RCW 49.60.205. Thus, the jury in a discrimination case performs its normal fact-finding role and does not defer to an employer's exercise of fact-finding discretion. Here, McChord's *"Baldwin"* instructions did not properly describe the jury's role in a discrimination case; the trial court did not err when it refused to give them.[16]

■ McChord's second argument is that the trial court erred when it refused to define "just cause" for the jury.[17] A jury should not be instructed on issues of fact not presented by the evidence. *State v. King*, 92 Wn.2d 541, 547, 599 P.2d 522 (1979); *State v. Robinson*, 76 Wn.2d 218, 219, 455 P.2d 945 (1969). At trial, Carle was not claiming that she was dischargeable only for cause. Thus, just cause was not an issue for the jury to decide, and the trial court did not err by refusing to define it.

■ McChord's third argument is that the trial court erred when it declined to instruct that an employer has the right to fire an at will employee for any nondiscriminatory reason.[18] A trial court is not required to give instructions that are cumulative. *Adair v. Northern Pac. Ry.*, 64 Wn.2d 539, 543-44, 392 P.2d 830 (1964); *Jensen v. Beaird*, 40 Wn. App. 1, 18-19, 696 P.2d 612, *review denied*, 103 Wn.2d 1038 (1985); *see Kennedy v. Clausing*, 74 Wn.2d 483, 493, 445 P.2d 637 (1968). A specific application of that principle is that a trial court is not required to instruct negatively on a proposi-

---

[16]Having ruled that the proposed *Baldwin* instructions do not apply, we need not discuss other defects they may have contained.

[17]Proposed instruction 20.

[18]Proposed instruction 15; proposed supplemental instructions 1 and 2.

tion already stated positively. *See Rickert v. Geppert,* 64 Wn.2d 350, 355-56, 391 P.2d 964 (1964); *Larson v. Seattle,* 25 Wn.2d 291, 299, 171 P.2d 212 (1946). In instruction 6, the trial court said that the *McDonnell Douglas* elements had been met and that McChord had produced evidence of a nondiscriminatory reason for discharging Carle.[19] In the same instruction, it went on to say that for the jury to find McChord liable, "The plaintiff must prove by a preponderance of the evidence that the reason offered by the employer for plaintiff's discharge is a pretext and that a discriminatory reason more likely motivated the employer."[20] For the court to have further instructed that McChord could *not* be found liable if it discharged Carle for a *non*discriminatory reason would have been to restate in negative form that which had already been stated positively, and the court did not err when it declined to do that.

### CHALLENGE FOR CAUSE

During jury selection, the second person questioned was a Mr. Benson. He was a current member of McChord Federal Credit Union and kept a small amount of money there so that his membership would not be terminated. He had obtained two loans from McChord, one of which he was still repaying at the time of trial.

Carle initially passed Benson for cause, but after two more jurors had been questioned and the lunch recess taken, she challenged him for cause due to implied bias. McChord objected to the timeliness and the substance of the challenge, and Carle agreed that a ruling could be deferred until it appeared she would exhaust her peremptory challenges. The rest of the first 12 jurors were then questioned and passed for cause, Carle exercised two of her peremptory challenges, and the court adjourned for the day. As the first item of

---

[19]As we have discussed at length, the *McDonnell Douglas* elements are part of the burden of production, and the burden of production is ordinarily for the judge. Whether they should be included in a jury instruction is not at issue here, and we express no opinion on that proposition.

[20]The propriety of this statement is not disputed on appeal.

business the next morning, the court heard argument on and granted the challenge to Benson. McChord reiterates its arguments on appeal.

██ The trial court did not err by considering the challenge even though it was untimely. Generally, challenges for cause must be taken before peremptory challenges. RCW 4.44.220. Nevertheless, a trial court has discretion to consider a tardy challenge for cause, and when it chooses to do so, its ruling will be overturned only for abuse. *Ottis v. Stevenson-Carson Sch. Dist. 303*, 61 Wn. App. 747, 760, 812 P.2d 133 (1991). Carle's challenge to Benson was indeed tardy, and we may assume that if the trial court had refused to consider it, she would have had no cognizable complaint.[21] The trial court did choose to consider it, however, and that choice was within its discretion.

██ Nor did the trial court err by granting the challenge. A prospective juror must be excused if he or she is impliedly biased. RCW 4.44.170(1); *Ottis*, 61 Wn. App. at 758-59. One way in which a prospective juror can be impliedly biased is if he or she has an "[i]nterest . . . in the event of the action, or the principal question involved therein". RCW 4.44.180(4). The reasoning necessary to determine whether a juror is impliedly biased due to interest in the action involves two steps. First, the trial judge must ascertain the facts. *See Ottis*, 61 Wn. App. at 757. Second, the trial judge must ascertain whether those facts constitute an interest of the type described in RCW 4.44.180(4). Because a great variety of fact patterns can arise, a trial court must have a measure of discretion in determining what constitutes an "interest" within the meaning of RCW 4.44.180(4), and its ruling should not be disturbed on appeal absent abuse of that discretion. *See State v. Rupe*, 108 Wn.2d 734, 748, 743 P.2d 210 (1987), *cert.*

---

[21]McChord relies on *Catarau v. Sunde & d'Evers Co.*, 188 Wash. 592, 596-97, 63 P.2d 365 (1936) and *State v. Schmidt*, 141 Wash. 660, 252 P. 118 (1927) for the proposition that Carle waived her challenge when she failed to make it in a timely fashion. In the first case, no challenge for cause was made at the trial level. In the second, the challenge was timely rather than tardy. Nothing in either case says that a trial court lacks discretion to consider a tardy challenge under appropriate circumstances. *See Ottis*, 61 Wn. App. at 760-61.

*denied*, 486 U.S. 1061 (1988); *State v. Bernson*, 40 Wn. App. 729, 740, 700 P.2d 758, *review denied*, 104 Wn.2d 1016 (1985). Moreover, it is a good rule of thumb for the trial judge to exercise discretion in favor of honoring a challenge whenever he or she "may reasonably suspect that circumstances outside the evidence may create bias or an appearance of bias on the part of the challenged juror." *Rowley v. Group Health Coop.*, 16 Wn. App. 373, 377, 556 P.2d 250 (1976) (quoting *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 627, 79 N.W.2d 249 (1956)). Here, Benson was a member and customer of McChord at the time of trial, and the trial court acted well within its discretion when it concluded that he had an "interest" within the meaning of RCW 4.44.180(4).[22]

## REBUTTAL WITNESS

On August 9, 1989, McChord identified Richard Brandsma, president of Tacoma Telco Credit Union, as an expert witness who would testify about the need for employees of financial institutions to be financially responsible. McChord neglected to state the substance of Brandsma's testimony as required by CR 26(b)(5)(A)(i) and CR 26(e), but it agreed to make him available for deposition. Due to Brandsma's schedule, however, no deposition was held before trial commenced on September 5. Brandsma was finally deposed 6 days later and according to Carle, it was at that deposition that she first learned what Brandsma would testify about.

The day after the deposition, Carle notified McChord that if Brandsma testified, she would rebut his testimony by calling Warren Duffy, president of United Northwest Federal Credit Union.[23] McChord objected on grounds that

---

[22]In support of this conclusion, we note that RCW 4.44.180(4) specifically states that a prospective juror will not be deemed to have an interest in an action because he or she is "a member or citizen of the county or municipal corporation." By omission, this tends to imply that one may be found to have an interest if he or she is a member or stockholder of a private entity such as a credit union.

[23]At the time of trial, Carle was an employee of United Northwest Federal Credit Union.

Duffy was a "surprise witness" of whom it had not been notified. The trial court ruled that Duffy could testify, provided that McChord was given the opportunity to depose him first. Duffy's deposition was taken a few days after Brandsma's.

■ McChord now argues that the trial court erred by allowing Duffy to testify. Whether to permit rebuttal evidence is within the sound discretion of the trial court, *Kremer v. Audette*, 35 Wn. App. 643, 648, 668 P.2d 1315 (1983) (quoting *State v. White*, 74 Wn.2d 386, 394-95, 444 P.2d 661 (1968)), and error can be predicated only on an abuse of discretion. Here, McChord failed to make the substance of Brandsma's testimony known until September 11, 6 days into the trial. Carle immediately consulted with Duffy, who disagreed with Brandsma's opinions and was willing to testify. The very next day, Carle notified McChord and the court that she intended to offer Duffy to rebut Brandsma and would make him available for deposition. The trial court did not err when it ruled that Duffy could testify.

## ATTORNEY'S FEES

After trial, Carle moved for reasonable attorney's fees in the approximate amount of $72,000, plus costs in the approximate amount of $13,000. It was undisputed that the age discrimination claim was the only one on which she was entitled to amounts in excess of statutory costs. *See* RCW 49.60.030(2). Carle asserted that 95 percent of her fees had been incurred on that claim, but the trial court ruled to the contrary.[24] It awarded her reasonable attorney's fees of $47,515 and costs of $6,749.

---

[24]The trial court stated:

"The case started with multiple causes of action and was ultimately reduced down to two causes of action. Additionally, there was considerable trial time and briefing spent on the negligent infliction of emotional distress cause of action during the course of the trial, and I can only presume that there was similarly a considerable amount of discovery related to the same.

"It is my belief there is no precise method which can be employed to award attorney's fees. However, in the view of the multiple causes of action and the manner in which the case was tried, I am attributing 65% of the fees to the

██ ██ When determining the amount of reasonable attorney's fees to be awarded in connection with an áge discrimination claim, a trial court has discretion. *Xieng v. Peoples Nat'l Bank*, 63 Wn. App. 572, 586, 821 P.2d 520 (1991) (costs); *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 447, 810 P.2d 952, 815 P.2d 812 (1991) (costs), *review denied*, 118 Wn.2d 1008 (1992). Its exercise of that discretion will not be reversed absent abuse, *Allard v. First Interstate Bank of Wash., N.A.*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989); *Xieng*, 63 Wn. App. at 585, and discretion is abused only where no reasonable person would have taken the view adopted by the trial court. *State v. Pederson*, 44 Wn. App. 391, 396, 722 P.2d 127, *review denied*, 107 Wn.2d 1005 (1986). In this case, the manner in which the trial court segregated attorney's fees incurred on the age claim from attorney's fees incurred on other claims was reasonable, *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 450, 815 P.2d 1362 (1991), and there was no abuse of discretion.

Carle has substantially prevailed on this appeal. As a result, she is entitled to reasonable attorney's fees and costs incurred in this court, except fees and costs attributable to her cross appeal. RCW 49.60.030(2); *Xieng*, 63 Wn. App. at 587; *Pannell*, 61 Wn. App. at 450.

Affirmed.[25]

ALEXANDER, J., and WORSWICK, J. Pro Tem., concur.

⏌

---

discrimination claim and I am thus, awarding attorney's fees in the amount of $47,515.00."

[25]Just before oral argument, McChord made a motion on the merits. The motion was denied by one of the commissioners of this court. After oral argument, McChord moved for an order modifying the commissioner's ruling. The clerk returned that motion as untimely, and McChord then moved to modify the clerk's ruling as well as the commissioner's. We now grant the motion to modify the clerk's ruling but deny the motion to modify the commissioner's ruling. Our reasons for the denial are those expressed in this opinion.